THE HOUSTON AND TEXAS CENTRAL RAILROAD CO. V. A. G. GRAVES & CO.

1. PLEA IN ABATEMENT. — A plea in abatement not questioning the jurisdiction over the subject-matter, but raising a personal privilege of defendant as to the venue, should aver fully not only what is necessary to be answered, but anticipate and exclude all such supposable matter as would, if alleged on the opposite side, defeat the plea.

2. VENUE IN SUITS AGAINST CORPORATIONS.—The act of the 14th Legislature, chap. 31, taking effect March 21, 1874, prescribes the rule as to venue, and which is the law, as follows : "Hereafter any public or private corporation, including railroad companies, * * * may be sued in any court in this State having jurisdiction of the subject-matter, and in any county where the cause of action, or any part thereof, accrued."

3. SAME—ACT OF LEGISLATURE TOUCHING THE REMEDY.—Said act applied to an action pending when enacted, the plaintiff, by amendment subsequent to its enactment, having set up facts coming within its provisions.

4. PLEADING.—A petition is not subject to exception as multifarious, where the matters relied on for recovery in the petition are connected with or grow out of the same cause of action, or transaction, and subject-matter of dispute.

5. SAME.—See causes of action not improperly joined in one suit.

ERROR from Collin.   Tried below before the Hon. W. H. Andrews.

The facts are given in the statement made by counsel for appellant in their brief and in the opinion.   This case was submitted at Austin, taken to Tyler, and decided Nov. 15, 1878.

*Goode, Bower & Combs,* for appellant. — This is a suit by Graves, Sherley & Co., against plaintiffs in error, begun December 18, 1873, averring a written contract between the parties, dated August 10, 1872, by the terms of which defendants undertook to deliver to plaintiffs, on their right of way in Collin and Grayson counties, 100,000 bois d'arc ties of certain dimensions, for which plaintiffs were to pay for those accepted $1.20 and $1.15 apiece, gold, depending upon lengths, one-half in cash and the balance at twelve months, with ten per cent. interest from date of inspection; modification of said contract August 30, 1872, a portion of oak and ·elm ties, for which plaintiffs were to pay 68 cents, gold, one-half cash and balance at twelve months, with ten per cent. interest from date of inspection; defendants' compliance; the appropriation by plaintiffs of many rejected ties; a verbal contract for 12 cents extra of the 68 cents on each pin-oak tie delivered south of McKinney; an inspection of the uninspected ties February 10, 1873, which had been placed on plaintiffs' road-bed, on which the engineer reserved fifteen per cent., or $942.92, one-half of which was due on inspection, the other at twelve months, with ten per cent. interest from that date, in gold; plaintiffs' failure to pay the money or give note for sum reserved; a delivery of 6,000 pin-oak ties, of the value of $720, gold, &c.; plaintiffs' refusal to pay or give note for same; an agreement by the engineer to have an inspection of other ties July 28, 1873, to be paid for at contract prices, in currency, at six months from August 1, 1873, amounting to $6,769.64; the taking of other uninspected ties of defendants of the value of $2,320; the appropriation by plaintiffs of rejected ties valued at $6,890.40; the

use by employés of a number of ties in repairs of road April 15, 1873; and lay their damages at $17,804.46, gold and currency.

By amendment filed March 15, 1874, they aver that 9,500 of the oak and elm ties and 3,500 bois d'arc ties so delivered in Collin county were rejected, and, with force and arms, appropriated by plaintiffs' agents and employés, the former worth 75 cents and the latter $1.25 apiece; that the moneys claimed in this and the original petition were due and payable in Collin county; the use by plaintiffs of other ties, amounting to $2,000, since this suit, taken before commencement of suit, of which they had notice at the time, and lay damages at $25,000.

A second amended petition was filed April 1, 1874, which fixes the number of uninspected ties at 1,700 oak and elm and 800 bois d'arc, the rejected at 9,000 oak and elm and 3,500 bois d'arc, appropriated by plaintiffs.

Defendants claim for twelve cents extra on pin-oak ties under verbal contract of October 15, 1872; the fifteen per cent. reserved on estimate of February 10, 1873; the inspected ties and the rejected ties alleged to have been used by plaintiffs.

Defendants interposed a plea in abatement to the jurisdiction of the court, and specially excepted because of multifariousness and want of jurisdiction apparent on the face of the pleadings, special plea, and general denial.

A demurrer to the plea in abatement was sustained and defendants' special exceptions overruled. These and other rulings are assigned for error.

The assignments present for the decision of this court two points: 1. The jurisdiction of the court below; 2. Multifariousness in defendants' pleadings.

1. As this suit was commenced before the acts of March 21 and April 17, 1874, (Laws 2d Sess., 14th Leg., pp. 31, 32, 107, 108,) they can have no bearing upon the point.

So far as the jurisdiction of the court over the alleged tres-

passes is concerned, we refer to the able brief of Goldthwaite & Turner upon that subject.

But, admitting jurisdiction for this purpose, it is insisted that it did not and could not attach jurisdiction over matters of contract having no relation to or connection with the alleged trespasses. For this we must look to the statute.

The language of Paschal's Digest, art. 1423, is: "No person who is an inhabitant of this State shall be sued out of the county in which he has his domicil," &c. Corporations are persons under statutes relating to such. (Mott *v.* Hicks, 1 Cow., 513; State of Indiana *v.* Woram, 6 Hill, 33; Lehigh Bridge Co. *v.* Lehigh Coal Co., 4 Rawle, (Penn.,) 9; State *v.* Nashville University, 4 Humph., 157; People *v.* May, 27 Barb., (N. Y.,) 238; Bank of Ithaca *v.* King, 12 Wend., 390; Schuyler Co. *v.* Mercer Co., 4 Gilm., 20; McIntire *v.* Preston, 5 Gilm., 49; Attorney-General *v.* Newcastle, 5 Beav., 307; 12 C. & F., 502; Boyd *v.* Croydon Railway Co., 4 Bing., (N. C.,) 669; Cortis *v.* Kent Water Works, 7 Barn. & C., 314; Penal Code, Paschal's Dig., 1625; Lafarge *v.* Exchange Co., 22 N. Y., 352; Wright *v.* New York Railway Co., 28 Barb., 80; Field *v.* New York Central Railway Co., 29 Barb., 176; Johnson *v.* McIntosh, 31 Barb., 267; 9 Abb. Pr., 40; Olcott *v.* Tioga Railroad Co., 20 N. Y., 210; The People *v.* Utica Insurance Co., 15 Johns., (N. Y.,) 358; Society, &c., *v.* Town of New Haven, 8 Wheat., 464; United States *v.* Amedy, 11 Wheat., 392; Thornton *v.* Bank of Washington, 3 Pet., 36–42; Commercial Bank *v.* Nolan, 7 How., (Miss.,) 508; Grand Gulf Bank *v.* Archer, 8 S. & M., (Miss.,) 151.)

They are residents. (Louisville Railroad Co. *v.* Letson, 2 How., (U. S.,) 497; Hubbard *v.* Insurance Co., 11 How., (N. Y.,) 149; Vallette *v.* Whitewater Canal Co., 4 McLean, (U. S.,) 192; New York and Erie Railroad Co. *v.* Shepard, 5 McLean, (U. S.,) 455; Cape Sable Company's case, 3 Bland, 606; Central Bank of Georgia *v.* Gibson, 11 Ga., 453; Hing

*v.* Gardner, Cow., 70; Louisville Railroad Co. *v.* Letson, 2 How., (U. S.,) 557–559.)

They are residents of the place where their principal office is situated, &c. (Ang. on Corp., sec. 102; Thorn *v.* Central Railroad Co., 2 Dutch., (N. J.,) 121; Conroe *v.* National Insurance Co., 10 How., (N. Y.,) 403; Adams *v.* Great Western Railroad Co., 6 Hurlst & N., 404; 30 Law J., (N. S.,) Exch., 124; 3 Law Times, (N. S.,) 631; Bristol *v.* Chicago Railroad Co., 15 Ill., 436.)

That there may be some apparent conflict in the decisions of the courts, we will not deny. But some of them are founded upon the statutes of particular States, and we respectfully submit that the weight of authority is against such jurisdiction.

In addition to the above, it is required, by article 4888 of Paschal's Digest, that railway corporations shall " establish " their " office at some point on the line of their road," &c. Notwithstanding it further provides for service of process there, the object was also to fix its residence or domicil, in order to know where it should be sued and to avoid service by attachment, which otherwise would have required suits where its property was situate.

Neither the contract, modification, nor proof shows an agreement to pay in Collin.

2. Multifariousness in the pleadings. These embrace trespasses and breach of contract, remedies *ex delicto* and *ex contractu.* (Clegg *v.* Varnell, 18 Tex., 300–306, and authorities cited.)

*Goldthwaite & Turner*, also for appellant.—The defendant pleads to the jurisdiction of this court. It is a railway corporation, chartered by the Legislature of the State of Texas. In accordance with an "An act to regulate railroads,"—" Sec. 4. Such corporation shall, as soon as convenient after its organization, establish a principal office at some point on the line of its road, and change the same at pleasure, giving public notice of such establishment and change; and all pro-

cess against such company shall be served on the president or secretary, or by leaving a copy at the principal office of the corporation," (Paschal's Dig., art. 4888,)—the defendant established its principal office in the city of Houston, county of Harris, and State of Texas, and gave public notice thereof, and has there had its principal office since the date of its organization.

"The place of business of a corporation has, for many purposes, the same legal incidents as the residence of a natural person. It gives to the courts jurisdiction over the company, and determines the legality of service of process and the sufficiency of notice. In this country the place of business of a corporation is considered its residence, and brings such a company within the operation of statutes relating to the residence of natural persons." (1 Am. R. R. Cas., p. 143, where all the authorities are cited.)

The Supreme Court of Texas declares: "A railroad company is an artificial person, and for many purposes is regarded in the law as subject to the same responsibilities and liabilities as a natural person." (Bartee *v.* Houston and Texas Central Railway Co., 36 Tex., 648.)

"The corporation being created in this State and carrying on its business in this State, must be treated, when it becomes a litigating party, as a resident of this State." (Sherman *v.* B. B. B. and C. R. Co., 21 Tex., 357.) And in this case it was held that the statute of limitations, using the term "persons," applied with equal force to corporations.

"The place of residence of a corporation is deemed to be the place where its principal office is located or where its principal operations are carried on." (Abbot's Dig. of Corp., title RESIDENCE, and numerous authorities there cited.)

"An inhabitant and resident mean the same thing, and the word 'domicil' is evidently used in the statute in the sense of residence." (Brown *v.* Boulden, 18 Tex., 433.)

The venue in all actions in this State is fixed by statute.

"No person who is an inhabitant of this State shall be sued

out of the county where he has his domicil, except in the fol-
lowing cases, viz.:   *   *   *   "7. Where the defendant has
committed some crime, or offense, or trespass for which a civil
action in damages may be commenced, in which cases suit
may be instituted in the county where the crime or offense
or trespass was committed, or in the county where the defend-
ant has his domicil."   (Paschal's Dig., art. 1423.)

"It is manifest that the object and meaning of the act was
for the protection and convenience of resident citizens of the
State, in preventing them from being drawn from their own
county, perhaps, to a distant one, and on an increase of ex-
pense, to defend suits that might be instituted against them,
and, so far as we may at any time be called upon to carry that
salutary object into effect, it would claim a liberal construc-
tion."   (Lipscomb, J., in Finch *v.* Edmundson, 9 Tex., 510.)

The cherished policy of the law is that the inhabitants of
the State shall be sued in the counties in which they respect-
ively have their domicils.   This is the general rule, modified
by certain exceptions specifically designated by the statute.
This was the rule under the former or Spanish system of
jurisprudence, and it has always been regarded as just in
itself and eminently advantageous to defendants, for whose
benefit it was intended.   *   *   *   "The defendant cannot
be dragged from the forum of his own domicil by any mere
contrivance to evade the domestic jurisdiction."   (Hemphill,
Ch. J., in Pool *v.* Pickett, 8 Tex., 123.)

Such being the general rule—the cherished policy of the
law—made for the advantage and benefit of the defendant,
the exceptions to this general rule so specifically designated
must be strictly construed.   In other words, the plaintiff
must show clearly and unmistakably that the defendant is
within one of the exceptions "before he can be dragged from
the forum of his own domicil."   The plaintiff will not be
aided by the court in making a doubtful and strained con-
struction for his benefit.   If there is any doubt or ambiguity
in the language of the exception, the party for whose benefit

the general rule was established should have the benefit of the doubt. The plaintiff will not be permitted to say to the defendant: "It is true, the general rule which requires me to sue you in the county of your residence is established for your benefit; but here is an exception, about the proper construction of which there may be a doubt, and if I can raise a doubt by construction, the benefit of that doubt must be given against the general rule and in favor of the exception." The only proper construction of an exception to a general rule is the literal or strict construction. The meaning of an exception cannot be extended by doubtful construction. In construing an exception to a general rule, to be in doubt is to be resolved, and every resolution which springs from doubt is against the exception.

We claim that the language employed in the exception under which this suit is brought is too clear, too plain, too unmistakable, to be misunderstood. There are no real imperfections or insufficiencies in the text. There are no conclusions in the spirit of the text which are not within the letter of it, and therefore no necessity to call for the aid of construction.

"Where the defendant has committed some crime, or offense, or trespass for which a civil action in damages may be commenced," is the language. In other words, when the defendant has done some crime, or offense, or trespass for which, &c.; or when the defendant has perpetrated some crime, or offense, or trespass for which, &c.; or, again, when the defendant has been guilty of some crime, or offense, or trespass for which, &c.; or, again, when the defendant is a criminal, or an offender, or a trespasser in an act for which, &c. The defendant must be the actor in commission of the crime, or offense, or trespass. Any other interpretation does violence to the letter of the statute. To give the effect and meaning for which the plaintiff contends, the language must be changed so as to read: "When the defendant is liable for the consequences of a crime, or offense, or trespass committed,

suit may be instituted in the county where," &c.　To make such a change, so materially affecting the rights of defendants, the court must abandon its proper sphere—to expound the law—and invade the province of the law-maker.　Whatever may be the opinion of the court as to what the law ought to be, it is no reason for a departure from what the law is, and no court would be justified in extending the meaning of a statute by unwarranted construction beyond the literal import of the words used.

The words "crime and offense," as used in this statute, have already been interpreted by the court in Illies *v.* Knight, 3 Tex., 315, where it is said that they are used not in their popular, but in their legal signification.　The word "trespass" is now coupled with them; trespass in its legal signification. Trespass, in its legal signification, is a wrong committed with immediate and direct force.　A wrong committed without immediate and direct force is not a trespass.　A wrong committed with immediate and direct force is, by the common law, remedied only by the action "trespass," or, as it was sometimes called, "trespass *vi et armis.*"　A wrong in the nature of a trespass, committed without immediate or direct force, is, by the common law, remedied only by an action on the "case," or, as it is sometimes called, "trespass on the case."　The forms of action for the remedy of the two wrongs were just as distinct as the wrongs *in ipsis.*　If the plaintiff, having a cause of action for a trespass *per se,* committed with force immediate and direct, mistook his remedy and brought his action in "case," he was nonsuited; and, *vice versa,* if the plaintiff, having a cause of action for a wrong in the nature of a trespass, committed without force immediate and direct, mistook his remedy and brought his action in "trespass," he was nonsuited.

We trust the perception of this court will be sufficiently acute to discern and appreciate our object and purpose in citing the cases under the common law which show the distinctions between and the lines demarking the forms of the

actions "trespass" and "case"; that it will have sufficient penetration to avoid the error into which our Supreme Court fell in the case of Bartee *v.* H. & T. C. R. W. Co., *infra*, viz., of confounding the act "trespass," the thing done, the wrong committed, with "trespass," the form of action at common law by which the wrong committed was to be redressed.

It is true, all distinctions between forms of action in this State are abrogated. But let us suppose that our statute was silent upon venue in civil actions, and that at the common law the venue in trespass *vi et armis* was local, while the venue in trespass on the case was transitory, would it be pretended that the mere abrogation of the form of action would deprive the defendant of the right to claim for his benefit and advantage that in the one case the action was local, and in the other transitory, according to the facts?

We are not seeking to establish a technical distinction, but to assert a valuable privilege, a right accorded to us under the law.

If we have committed a trespass, the venue in this case is properly laid. If we are liable only by relation for the trespass committed, the venue should be laid in the county in which we have our domicil.

If we have committed a trespass, the remedy at common law would be "trespass." If we are liable only by relation for the trespass committed, the remedy at common law would be "case." Where can we look, then, with more propriety, for the distinctions between committing a trespass in person, so to speak, and the liability resulting from the trespass committed by another, than to the common law, where these distinctions have been maintained always in "trespass" and "case"?

Counsel cited and discussed Morley *v.* Gaisford, 2 H. Blackstone, 442; Day *v.* Edwards, 5 T. R., 648; Savignac *v.* Roome, 6 T. R., 125; Leame *v.* Bray, 3 East, 593; I. C. R. R. Co. *v.* Reedy, 17 Ill., 580; Johnson & Castleman *v.* Ormsby, 2 Dana, 379; P. G. & N. R. R. Co. *v.* Wilt, 4 Wharton, 142; Yer-

ger *v.* Warren, 31 Penn., 319; Orr *v.* The Bank of the U. S. *et al.*, 1 Ham., 36; Barnes *v.* Hurd, 11 Mass., 57.

*Throckmorton, Brown & Bro.*, for appellees.

First. Had the District Court of Collin county jurisdiction of the person of defendant?

Second. Are the causes of action improperly joined?

Upon the first proposition, we call the attention of the court to the fact that the transaction which gave rise to the suit occurred in Collin county. Upon the principles which governed the venue in the origin of jury trials, that was the proper place for trial. If we consider the convenience of the parties, it would be the proper forum; for there, above all others, we would expect to find the witnesses.

A plea to jurisdiction is not regarded with favor by courts, and under the peculiar facts of this case it is entitled to no liberality of construction. The plea must be ample in its allegations and pleaded at the proper time. The amended petition, filed before the plea to the jurisdiction, alleged that defendant contracted to pay the sums charged, in Collin county. The plea did not deny that allegation, and, therefore, did not respond to the petition upon that question. The demurrer should have been sustained for that reason alone.

In the court below, it was contended that article 4888 of Paschal's Digest required suit against railroad companies to be instituted in the county where the principal office is located. We call attention to Baldwin *v.* M. & M. R. R., 5 Iowa, 518, construing a similar statute. By the language of the law, suit might be instituted in the county being the residence of the president or secretary with the same propriety. It is evident that the article referred to has no reference to the subject of venue.

A railroad company is an artificial person, not capable of having an actual residence or domicil. It is true that it is construed to be embraced within the terms "inhabitant" and

"resident," but this is only technical. Whether it be resident or non-resident, does not depend upon its place of business, but upon the power creating it. For instance, a corporation chartered by the laws of Texas, the stockholders of which all reside beyond the State, would be a domestic corporation, a resident of Texas; while such corporation created by the State of Louisiana, with its stockholders residing in this State, would be to us a foreign or non-resident corporation. (10 How. Pr., 405.) We see that the terms "resident" and "inhabitant," when applied to these artificial persons, are extremely technical, and afford a very unsafe rule by which to construe our statute.

* * * Paschal's Digest, art. 1423, enacts: "No person who is an inhabitant of this State shall be sued out of the county where he has his domicil," &c. We grant that a railroad may be considered as a person or inhabitant; but can it be said to have a domicil? The Supreme Court of New York has held that a railroad company cannot have a domicil. (17 How. Pr., 544.) In Brown *v.* Boulden, 18 Tex., 433, it is said that domicil in the statute is used in the sense of residence. We think that the court did not intend to include such residence as a corporation has by engaging in business, which is the only kind that it is capable of acquiring. (17 How. Pr., 543.)

Admitting, for the sake of argument, however, that a railroad company is embraced within the statute and is entitled to be sued in the county of its residence, we then claim that it may have several residences, (18 Tex., 433,) and may be sued in any county where it has a residence. The residence of a corporation can be determined only by its places of business. (17 How. Pr., 543.)

It has a residence wherever it carries on business regularly. The statute gives no preference to one residence over the other, as one being the principal residence. We conclude that if a residence means domicil, in this sense it includes any residence acquired and that gives jurisdiction.

The jurisdiction of the court in this case can be sustained upon four distinct grounds, which we enumerate:

First. Within the intent and meaning of Paschal's Digest, art. 1423, a railroad company is resident in each county through which its road is operated and in which it has an agent and transacts business.

Second. The railroad agreed to perform the contract in Collin county, which gave jurisdiction under the fourth exception in the article referred to.

Third. It committed a trespass upon the property of Graves & Co. for which an action would lie, and which gave jurisdiction under the seventh exception.

Fourth. On the 21st day of March, 1874, the Legislature passed an act which authorized suit in any county where the cause of action accrued.

Upon the first proposition there is some conflict of opinion; but we believe that the weight of authority and sound reason support us in asserting jurisdiction in this case. We invite attention of the court to a review of authorities relied upon by plaintiff in error. Upon a thorough examination of the authorities referred to in the brief of counsel, we believe that they will not be found to support the theory of the plaintiff in error. Angel & Ames on Corporations, sec. 107, intended to be referred to, treats of the residence of trading corporations. There is an obvious difference between a railroad and a trading corporation. The powers conferred upon them are widely different; their business transactions with the community entirely different; therefore the same rules cannot be applied in determining their privileges. A bank or an insurance company has its local places of business at which contracts are made and performed. The citizen deals with them purely from choice. A railroad company is a common carrier of freight and passengers, *quasi*-public, invested with many powers over the property of citizens and of extending its line, with or without consent, into the different portions of the State. It can scarcely be said that the trade is volun-

tary on the part of the citizen. By investing the corporation with the powers necessary to be granted, it is enabled to dictate terms to trade and travel, so that voluntary traffic is but an empty theory. We believe that the necessity of the citizen to be provided the means of ready redress against such bodies renders it proper to adopt a different rule of construction as to their privileges. It is well settled in all courts that the powers and privileges of private corporations will not be enlarged by construction.

We have examined the cases cited in the note to the above section, so far as in our reach, and do not find one that supports the text. In Vermont, a statute authorized suit against a railroad in any county through which the road passed. Another section declared that suit might be brought in the county where either of the parties resided. In Conn. & P. R. R. Co. *v.* Cooper, 30 Vt., 476, a railroad company brought suit against the defendant in a county in which the railroad was constructed, but not defendant's residence. It was a privilege given to the company to sue at its residence, by which the defendant might be taken from home to answer. The difference is clear in the construction of such acts. This was a privilege granted to the plaintiff, the reverse of that claimed by the defendant. The rule of construction would necessarily be to restrict that to one place which might be known.

In the case in Vermont, to hold the railroad residence, within the meaning of the statute granting a privilege, would be to lay the citizen liable to be carried to an uncertain distance to answer. The natural construction was to abridge the rights of corporations rather than enlarge them. Thorn *v.* Central Railroad of New Jersey, 2 Dutch., 121, is controlled by the legislation of that State, and will be found not to be in point. The case of Conroe *v.* National Protection Insurance Co., 10 Howard, 405, relates to a different kind of corporation; but the general principles laid down are disastrous to counsel's argument. The court, in that case, say:

" The residence of a corporation is most obviously where it is actively present in the operation of its enterprise." Bristol *v.* The Chicago and Aurora Railroad Co., 15 Ill., 436, is directly and unequivocally opposed to the conclusion drawn by the learned counsel in his brief.

\* \* \* We propose to examine some of the authorities cited, and feel confident that they do not sustain the able argument of the counsel. Paschal's Digest, art. 4888, is cited. The language of the act has no reference to the subject of venue, but, on the contrary, explains itself, by providing in the same sentence for service of process. How easy for the Legislature to have added that all suits should be brought at the same place. The only object was to provide a means for notifying these artificial persons of proceedings against them, and no other intention can be gathered from it. We again call attention to its language, which would authorize suit in the county of the residence of either office named as well as at the principal office. For a construction of a similar act, see 5 Iowa, 518.

Androscoggin and Kennebec Railroad Co. *v.* Stevens, 1 American R. R. Cas., 143, was a suit under a statute authorizing suit where either of the parties resided. The railroad extended through several counties and had three different offices; suit was brought in the county where one office was situated; objection was made to the venure, but the court sustained the jurisdiction. The note to this case refers to several decisions which we have examined. Louisville Railroad *v.* Letson, 2 H., 497, holds simply that a railroad, within the meaning of the law, is a resident of the State in which it carries on its business. The same reasoning would apply to a county, and prove it a resident of each county through which it is constructed. The Bank of the United States *v.* McKenzie, 2 Brock., 393, was where a bank in Philadelphia established a branch in Richmond. The question was whether or not the bank was a resident of Virginia. Chief Justice Marshall held that it was a resident. In Glaize *v.* South

Carolina Railroad Co., 1 Strobh., 70, the question involved was under discussion, and the court uses this language: "The company is represented by its road and possessions extensively through the State. Along the whole extent of its road rights and liabilities accrue. The materials for construction and repair, necessary supplies for its operation, agencies in the conduct of its business and the transportation of freight and passengers, give rise to contracts over a large portion of the State. The residence of a company, if local residence can be affirmed of it, is most obviously where it is actively present in the operation of its enterprise." After deciding that the courts along the line of the road had jurisdiction, the court says: "This conclusion best consists with public right and convenience. It does not seem just or proper that while a corporation may sue its debtors in any district of the State in which they may reside or be arrested, and thus, to some extent, select the district in which it may bring suit, it should also claim to be sued in a particular jurisdiction. The convenience and interest of the numerous creditors of the company to recover their demands in the court of the district in which they reside or the cause of action accrued, are entitled to as much consideration as the interest and convenience of the company to defend such suits in the court of Charleston district." Language could not be more appropriate to the case at bar. The Houston and Texas Central Railroad extends through Texas from Houston to Red River, makes contracts, and is constantly engaged in business in the different counties. It is claimed that by the laws of Texas they have the peculiar privilege of being sued in Houston.

These are the authorities referred to by Messrs. Golthwaite & Turner in their brief. They are said to be all of the authorities. We have seen how little support is derived from them.

In addition to these cases, we call the attention of the court to the following authorities, which will be found directly in point:

In the case of Pond *v.* Hudson River Railroad, 17 How. Pr., 543, the Supreme Court of New York had this question under consideration. The code of that State required that the plaintiff should sue in some county in which some of the parties to the action resided. The principal business of the railroad company was transacted in the city of New York, but it had an agent in Albany and transacted its business there. The action was commenced in Albany and a motion to change the venue to New York, on the ground that the latter was the residence of the company. "If it have several places of business, it must also be deemed to have several places of residence. The principal business of the defendant is transacted in New York, and yet they have a place of business in Albany. These facts, in my judgment, constitute the defendant, for the purposes of the question involved in this motion, a resident of the county of Albany." Such is the language used in the case of Pond *v.* Hudson River Railroad. These views are sustained by the following cases, which are at hand: 10 How. Pr., 405; 11 Ind., 303; 7 Ind., 29; 5 Iowa, 518; 15 Ill., 436; 64 N. C., 631; 1 Strobh., 70; 8 Iowa, 260; 31 Barb., 138.

In Brown *v.* Boulden, 18 Tex., 433, the court holds that a person may have several residences, and it is clearly inferable that suit could be maintained in either county in which the residence existed.

The laws of proceeding in Texas encourage the settlement of all differences between parties in one suit. If, then, we can establish the rightful exercise of jurisdiction over defendant as to one of the demands, the court will retain jurisdiction as to all other claims rightfully joined in this suit.

2. We come now to consider the second proposition. If no special agreement is made, delivery and payment are concurrent acts. (2 K. Mary., p. 496.) "If an agreement is made to pay upon delivery at a certain place, it can be construed to mean nothing less than a promise to pay at that place."

The defendant agreed to have monthly estimates of the ties, and "immediately upon a monthly estimate the party of the second part promises to pay the party of the first part the contract price for said ties so estimated." By the terms of this contract the railroad undertook to pay immediately upon an estimate, which estimate was to occur at the place of delivery, which was in Collin county; therefore the promise was to pay at the time and place of estimate.

3. The seventh exception, in article 1423, provides, in substance, that when a person has committed a trespass for which a civil action in damages may be maintained, such suit may be in the county where the trespass was committed. The word trespass, as used in this place, is, in its broadest sense, with the qualification, only that it must be such as gives a right of action. Blackstone defines trespass to be any "misfeasance or act of one man whereby another is injuriously treated or damnified." (3 Blackst. Comm., 208.) It is further defined to be: "Any unlawful act committed with violence, actual or implied; to the person, property, or rights of another." (Bouv. Law Dict., title TRESPASS.)

The ties which were rejected and marked X continued to be the property of Graves & Co., and were in their constructive possession. It is true that the ties were upon the right of way of the defendant, placed there by consent and agreement. They were at the risk of Graves & Co. until the estimate was made by the railroad company. Hence the ties were in the possession of Graves & Co., and as to those rejected the possession was never changed. It is clear that the taking of the ties which had been rejected was a trespass committed by the defendant for which a civil action in damages would lie, and, for the value of the ties so taken, the District Court had jurisdiction under the seventh exception.

4. During the pendency of this suit the Legislature enacted a law, by which it is provided that suits might be maintained in any court having jurisdiction of the subject-matter in any county where the cause of action arose. (See Laws

14th Leg., p. 31.)   We need not quote authority to show that this affects the remedy, and that the Legislature has entire control of that subject.   The effect of the statute in this case is not subject to the objection of being retroactive. The Legislature might have cured the want of jurisdiction, if it existed, by direct language; but in this case the language used is "hereafter," in reference to the commencement of proceedings.   It applies to causes of action existing before as well as those arising subsequently to the passage of the law.   The act is in the nature of a remedial statute, and is entitled to a liberal construction to promote its object.

The allegations of the original and first amended petition were such as to bring it within the terms of the statute alluded to.   By this act jurisdiction was cast upon the court. If Graves & Co. had gone out of the court upon the plea to the jurisdiction, the suit could have been immediately instituted in the same court.   It was no injury to the railroad company to continue the suit after the jurisdiction was given by law.

On the 1st of April, 1874, Graves & Co. filed an amended petition in the case, reiterating the facts which would give jurisdiction under the statute of March 21, 1874.   The amendment was filed after the passage of the law and before action upon the plea, which was had on the 8th of April, seven days after the amendment was filed.   By this amendment the jurisdiction was fixed under the last act.

We call the attention of the court to the following cases upon the question of amendments to cure want of jurisdiction: Ward *v.* Lathrop, 11 Tex., 287; Evans *v.* Mills, 16 Tex., 196; Culbertson *v.* Cabeen, 29 Tex., 247.

5. Are the causes of action improperly joined?

Counsel cited and discussed the following authorities: Carter & Hunt *v.* Wallace, 2 Tex., 209; Dobbin *v.* Bryan, 5 Tex., 276; Pitts *v.* Ennis, 1 Tex., 604; Teas *v.* McDonald, 13 Tex., 353; Hancock *v.* Dimon, 17 Tex., 370; Knapp *v.* Mills, 20

Tex., 123; Clegg *v.* Varnell, 18 Tex., 294; Walcott *v.* Hendrick, 6 Tex., 416. .

BONNER, ASSOCIATE JUSTICE.—This case was transferred to Tyler from the Austin branch of the court.

The following is believed to be a sufficient statement of the case to show the application of the principles announced in the opinion.

On December 18, 1873, defendants in error, A. G. Graves & Co., as plaintiffs, instituted suit in the District Court of Collin county against plaintiffs in error, the Houston and Texas Central Railway Co., on an alleged written contract and modification of the same, and a subsequent verbal addition thereto, by which the plaintiffs agreed to deliver to the defendants upon their right of way in Collin county certain cross-ties, at prices depending upon the kind and length of timber, one-half the price to be paid for immediately on delivery, and for the remainder the note of the company to be given. The ties were to be inspected at stated periods by the company. The causes of action, as alleged in the original and amended petitions, may be grouped into two classes—

1. For alleged reservation of fifteen per cent. on an inspection had February 10, 1873; for twelve cents extra on six thousand pin-oak ties; and for certain inspected ties, for which voucher B was given.

2. For certain uninspected and rejected ties placed by plaintiffs upon said right of way under said contract, and alleged to have been taken by defendants by force and arms and converted to their own use and benefit.

The defendants pleaded, in abatement to the jurisdiction of the court, that the principal office and business domicil of the company was in the city of Houston, in the county of Harris, and claimed to have the privilege of being sued there. They also raised this question by exception, and the further question, that the pleadings of plaintiffs were multifarious, in

having joined in the same suit an action upon a contract and upon a trespass.

The plaintiffs excepted to the plea to the jurisdiction, because it did not show a want of jurisdiction in said District Court of Collin county.

On the trial, plaintiffs' exception to the plea in abatement was sustained and the defendants' exceptions were overruled. On verdict of a jury, judgment was rendered for the plaintiffs and the defendants appealed, and the above two rulings of the court, with other alleged errors, have been assigned. These two seem to be the controlling questions, and have been elaborately presented.

1. As to the alleged error in sustaining plaintiffs' exceptions to defendants' plea in abatement.

The question was not one of jurisdiction over the subject-matter, but of personal privilege only. This character of plea should aver fully not only what is necessary to be answered, but anticipate and exclude all such supposable matter as would, if alleged on the opposite side, defeat the plea. (Gould on Plead., ch. 3, secs. 57, 58; Hollingsworth v. Holshousen, 17 Tex., 44.)

In the case of Breen v. The T. & P. R. R. Co., 44 Tex., 304, in the consideration of a similar plea to the one now before the court, in which it was simply averred that the principal office of the company was in Marshall, in the county of Harrison, it was held defective, in this: that it did not negative, but that the trespass may have been committed in the county of Wood, in which the suit was brought.

We think, then, that the court did not err in sustaining the exception to the plea in abatement. Did it err in overruling defendants' exception, which also presented the question of jurisdiction?

Under the decision of Bartee v. Central Railway Co., 36 Tex., 648, this exception was not well taken; and by act of the 14th Legislature, sec. 31, which took effect March 21, 1874, the question so fully presented by counsel for plaintiffs

in error will cease to be a practical one. This act provides: "That hereafter any public or private corporation, including railroad companies, * * * may be sued in any court in this State having jurisdiction of the subject-matter, and in the county where the cause of action, or any part thereof, accrued," &c.

This statute was in force at the date of the last amendment by plaintiff, April 1, 1874, by the allegations of which this suit was brought within its provisions, and also when the judgment was rendered on the exceptions. It affected the remedy only, and not the substantial rights of the parties; and, by a well-established principle, the judgment should have been according to the law as it then stood, though amended after the institution of the suit. (Cooley's Const. Lim., 362.)

2. The other point presented by the exceptions was, that the pleadings of the plaintiffs were multifarious.

In our opinion, the causes of action here sued upon were not so distinct and inconsistent in their nature as to be subject to this objection. Our system of pleading is intended to prevent circuity and multiplicity of actions, and to obviate "the technical and artificial boundaries of the common law." (Carter *v.* Wallace, 2 Tex., 209.) We do not say that a case may not arise with us where the objection of multifariousness would not be well taken; but we think, as a general rule, that the principle announced in Walcott *v.* Hendrick, 6 Tex., 415, should govern: that an objection which would be well taken under a system where there are forms of action should not prevail with us, where the matters relied on "are connected with or grow out of the same cause of action, or transaction, and subject-matter in dispute." Particularly should this be the case where the parties and the evidence are the same.

We do not think, then, that there was error in overruling the defendants' exception upon either of the points presented.

3. There are several other alleged errors assigned. We

have given them very careful consideration and repeated examinations in connection with the charge of the court and statement of facts, and although we are impressed with the belief that the plaintiffs recovered at least the full amount to which they were entitled, and that the judge presiding would have been justified in granting a new trial on the ground that the verdict was excessive, yet we do not find in the record such error as will authorize us to revise his discretion in this particular, or to reverse the cause on other grounds. The judgment below is therefore affirmed.

AFFIRMED.