MERRILL, TOWNSEND & BOYNTON *v.* LEVERETT B. ENGLESBY,
   *trustee of* JACOB C. HAWLEY; ASAHEL PECK AND OTHERS
   *claimants.*

*Practice.   Void, or inoperative and defective assignments; how
         remedied.   Trustee process.   Statute of frauds.*

Upon exceptions to a decision of the county court in reference to the liability of a
   person summoned as a trustee, by which his disclosure is made a part of the case,
   and no evidence appears to have been introduced in contradiction of it, the state-
   ments contained in the disclosure will be regarded as facts found by the county
   court.

An assignment which is defective, on account of its containing a resulting trust
   before providing for all of the assignor's creditors, may be remedied by a new
   assignment, and probably, without resort to a new assignment, by a mere declar-
   ation of trust in favor of all of the creditors.

The word "*void*" in the act of 1843, declaring certain general assignments void, &c.,
   construed as implying only inoperative or voidable.

An assignment which is inoperative under that statute, on account of its generality,
   may be cured by a new assignment, less general, in which a substantial portion of
   the assignor's estate is omitted and left exposed to attachment.

An assignment which is void or inoperative under that statute will, if assented to by
   the creditors, become operative and binding upon them.

Under the provision of the statute allowing the trustee to retain or deduct his
   demands against the principal defendant from the effects in his hands, he may
   retain whatever, before the service of the trustee process, he becomes legally bound
   to pay to any third party on account of the principal defendant.

The promise of an assignee to keep the assigned property for the benefit and secu-
   rity of certain sureties of the assignor is an original undertaking, and not within
   the statute of frauds.

TRUSTEE PROCESS.   The following facts are stated in the dis-
closure of the trustee, or appear from the papers attached to it.

On the 8th day of December, 1851, the principal defendant exe-
cuted and delivered to the trustee an assignment of all his goods,
chattles, moneys, debts, accounts and demands, and all the real
estate he owned, or was interested in, in the town of Burlington, in
trust for the benefit of certain enumerated creditors, who were
divided into four classes, and a distinction by way of preferences
made between the different classes.   On the 9th of the same Decem-
ber, he executed and delivered to the trustee another assignment
of the same property, and in all respects like the first, except that

it contained a provision, after the payment of the creditors enume-
rated and divided into said four classes, for the payment of all of
the assignor's other creditors.   On the 10th of the same December,
he executed and delivered, for the same  purposes with those
expressed in his assignment of the 9th, an assignment, to the trustee,
of certain debts due, notes and demands, and articles of personal
property specified in schedules annexed to the assignment.   And
on the 13th of the same month he executed and delivered to the
trustee a conveyance of all of his real estate in the town of Bur-
lington upon the same trusts and for the same purposes expressed
in the last two preceeding assignments.   These assignments were
marked and referred to in the order of their dates as assignments
A, B, C and D.   The trustee took possession of most of the prop-
erty upon the execution of the first assignment, and there was no
formal surrender of that, or of the second assignment, upon receiv-
ing either of the subsequent ones.   There was a horse, sleigh, and
two wagons and sundry accounts, most of which were for less than
ten dollars, which were not included in the third assignment, but
the trustee received a general bill of sale of the horse, sleigh and
wagons, dated December 13th, 1851, under which he took pos-
session and disposed of them, and their proceeds went into, and
were distributed with the proceeds of the property sold under the
assignment.   Previous to the service of the trustee process, the
trustee had  paid some of the creditors specified in the first three
classes, and had notified those specified in the fourth class that he
was prepared to pay them nine per cent upon their claims against
Hawley, and some of them had accepted of that dividend.   The
third class of creditors under the assignments were sundry persons
who were to be indemnified and saved harmless from all liabilities
they had incurred as sureties and endorsers for the assignor, among
whom were Asahel Peck and the other persons who appeared as
claimants in this suit; and the trustee disclosed that he was noti-
fied by the said Peck, in January, 1852, not to surrender to Haw-
ley the property received under the assignments.

   At the March Term, 1855, Asahel Peck, Horace Wheeler,
James Morse, Seth Morse and Myron Morse appeared as claim-
ants and filed allegations, averring that, at the time of the making
of said assignments, they were respectively liable as sureties for the
principal defendant to a large amount,—that the assignment was

made to secure them for said liabilities, and that, before the service of the trustee process in this suit, they accepted of the assignment and adopted the assignee as their trustee, and thereby acquired a lien upon the property in his hands, and, relying upon the same, had paid most of the demands, whereon they were liable, &c. An objection was made to the said Peck being allowed to appear as claimant, for the reason, (as alledged,) that he had not such an interest in the matter as entitled him to so appear; but the county court, May Term, 1854,—POLAND, J., presiding,—overruled the objection, to which the plaintiffs excepted.

The allegations of the claimants were then traversed, and upon the trial of the issue thus formed, at the November Term, 1855,—PIERPOINT, J., presiding,—it appeared that the said Peck was, at the time the several assignments were made, surety for the defendant Hawley, to an amount sufficient to absorb the funds in the trustee's hands, and that he had since paid such liabilities as surety for the defendant; it also appeared that said Peck, before the first assignment, requested the defendant to furnish him security, which the defendant promised to do by leaving with his (Peck's) clerk, that day, good notes sufficient for that purpose, which promise was made the 8th day of December, 1851, as Peck was about leaving for Hydepark; and that upon his return the defendant informed him that he had put into the hands of Englesby property sufficient to secure him (Peck) and the defendant's other endorsers.

Peck immediately called on Englesby and requested him to hold on to the property for his (Peck's) security, and Englesby agreed so to do; but said Peck did not, at the time, nor did Englesby suppose that Peck would be entitled to any more than his proportion with the other sureties of the defendant; and after that Englesby applied to Peck and received from him advice and direction in reference to the management and disposition of the property.

Thereupon the court adjudged that the trustee was not liable, and that he recover his costs; to which decision the plaintiffs also excepted.

*G. F. Edmunds* and *Roberts & Chittenden* for the plaintiffs.

The first assignment, under which the property passed into the hands of the trustee, was void not only as a *general* assignment but as containing a resulting trust; and all the subsequent assignments

were void, without reference to the first, on account of their generality.

As the paper "A" conveyed *all* the property of Hawley, and was not attempted to be cancelled or revoked, the subsequent instruments conveyed nothing, and were of no effect as against the suit of the plaintiffs; 10 Paige 210, *Brownell* v. *Curtis;* or, at most, they merely amounted to new declarations of trust. Neither Hawley nor Englesby could revoke it; the creditors provided for, had acquired an interest in it. It was completely binding until it should be judicially condemned, at the suit of a creditor; 17 Vt. 297.

The two last instruments, (had there been no others,) were clearly a general assignment. They do not purport to be partial and Hawley had no other property, save that mentioned in the disclosure; 17 Vt. 390, *Dana* v. *Lull.*

The claimants were improperly cited in, and had no right to appear. The statute, (Comp. Statutes 263, § 53,) neither in letter or spirit applies to such a case.

The proof, under the allegation, merely amounted to an acceptance of the assignment;—Hawley has given no other order or direction as to the property, than the assignments; and all the promise of Englesby to Peck amounted to, was merely, (as both understood it,) that he would hold the property under the assignments for the benefit of Peck and the other creditors in his class.

Neither party supposed they were entering into any new contract or obligation, and the promise was verbal. See *Hazeltine* v. *Page,* 4 Vt. 54; 19 Vt. 98, *Barney* v. *Douglass;* id. 644, *Strong* v. *Mitchell.*

Such being the facts, the application of Englesby to eminent counsel for advice and direction in the matter, created no new right; *Goodell* v. *Williams,* 21 Conn. 419.

The trustee, admitting the receipt of the property, must be held, unless sufficient matter in discharge appears on the record; 2 Met. 376; 17 Pick. 435; 21 Pick. 160.

*L. B. Englesby* and *Underwood & Hard* for the trustee and claimants.

The papers marked A, B, C and D, are not to be construed together; as it is obvious that the papers C and D were made to

supersede A and B; and hence A and B are no part of the contract contained in C or D.

The assignment C, upon its face, purports to be a specific or partial assignment; and the claims to be secured by it are *bona fide.* It is the duty of the plaintiffs, who seek to overthrow the assignment upon the ground that it is, in fact, a general assignment, to prove this; *Mussey et als* v. *Noyes et al.,* 26 Vt. 474–5.

The trustee's disclosure and the papers A and B, do not, *ex vi termini,* prove the assignment, *as a matter of law,* to be general within the statute. The court were authorized to give them such weight as they thought proper, and upon this matter this court cannot revise the finding of the county court, any more than they could the verdict of a jury; *Cahoon* v. *Ellis and Tr.* 18 Vt. 500; *Emerson* v. *Bradley and Tr.* 18 Vt. 586; *Fish* v. *Field and Tr.* 19 Vt. 141.

The agreement on the part of Hawley to secure Peck in his absence, and his subsequent communication that he had done so; and the fact that Peck thereupon went to Englesby and requested him to retain and dispose of the property for his benefit, and Englesby's agreeing to do so, and then disposing of the property under Peck's advice and directions, is sufficient to show that Peck was the principal, and Englesby his agent; and that Peck had a clear vested interest, which he could enforce at law or in equity. This was the same in effect, as if the whole property had been put into Peck's hands to secure him; and establishes Peck's claim independent of the assignment.

If the assignment is void under the statute, certainly the creditors would have a right to make any other arrangement to secure themselves; and the facts clearly tend to show, and the court are authorized to find, that Peck was proceeding independent of the assignment; and this court will so treat it, if that is necessary to sustain the decision of the court below; *Wheeler et al* v. *Evans and Tr.,* 26 Maine 133; *Leyro* v. *Staples,* 21 Maine 252; *Fletcher* v. *Clark,* 29 Maine 485.

The opinion of the court was delivered by

REDFIELD, CH. J. In regard to the construction which is to be put upon the case, there seems to be some difference of opinion

among the counsel. But it seems to us that, as the disclosure is made part of the case, with the accompanying documents, and as no evidence seems to have been introduced in contradiction of it, and as it evidently must have formed the basis of the decision, or of any understanding decision upon the subject, it must be regarded as a part of the case here, and the statements, as facts found; we feel so confident such must have been the understanding of the judge, allowing the exceptions, that if we adopted any different view of the legal construction of the exceptions, we should feel bound to give an opportunity to have the exceptions revised by the judge.

In this view of the case, it seems to us all the assignments must be regarded as void or inoperative, under the statute of 1843. We should not find any difficulty in adopting the view of the court, in *Ingraham* v. *Wheeler*, 6 Conn. 277, and thus conclude that the latter assignment, C and D, which is evidently but one transaction, is not vitiated by the former assignments, A and B, which were never rescinded or formally surrendered. These instruments, which, in the language of the statute, were void as to creditors of the assignor, by reason of being general, and one of them also by reason of a resulting trust before providing for all the creditors, probably were not affected with any taint or vice which rendered them incurable. They were, in a more strict sense, imperfect, or defective; and were, on that account, *voidable* by the creditors of the assignor, as is said in *Edwards* v. *Mitchel*, 1 Gray 239, by Shaw, Ch. J., "such conveyance is not absolutely void, but voidable only by creditors." And although our statute of 1843 uses the term "void as to creditors," it is obvious nothing more is intended, than inoperative, or voidable. It is more like the statute of frauds, by which certain contracts are made of no obligation unless in writing. They are only defective in this particular. It is a further formality, which is made requisite by the law. This may be done at any time, and it is not needful to wipe out the former ineffectual contract. So, too, in regard to this assignment, the resulting trust, without provision for all the assignor's creditors, was an omission which the law would not sanction, and which enabled the creditors to avoid it. But the assignment B supplied this defect by providing, in terms, for the payment of all the assignor's

debts. This was not only allowable, but it was certainly commendable, and we see no reason why it might not be done by a mere declaration of trust in favor of all the creditors, in addition to the former assignment, without making the whole paper anew. So, too, in regard to the generality of the two first assignments, it was a fact which made the whole contract voidable or inoperative, as to the creditors; but it was a defect which may be cured by excepting some substantial portion of the estate, and leaving it open to attachment. And the fact, that two additional papers were made transfering the same property with certain qualifications, and less general forms of conveyance, shows very clearly that it was the purpose of the assignor and the trustee, to abandon the former contracts, and to make one in conformity to this provision of the statute. But, from the disclosure of the trustee, we do not think it could fairly have been found by the county court, that any substantial part of the property was omitted, or that it was in any such state, being conveyed to the trustee or assignor by a cotemporaneous bill of sale, as to leave the assignment anything but a general assignment, within the decision of this court in *Mussey* v. *Noyes & Co.* 26 Vt. 462.

The only remaining question in the case is, whether the assignment was capable of being made operative as to such creditors as assented to it, and thereby make the assignee their trustee. After some hesitation, we are compelled to believe, notwithstanding the apparent incongruity of admitting that a contract of assignment, void or voidable under the statute, may be so far affirmed by the creditors themselves, as to be binding, not only upon themselves, but good as against the other creditors, as to whom it was originally void or voidable, that the proposition is maintainable upon the soundest principle.

This is certainly the doctrine maintained in some of the Massachusetts cases refered to in argument, *Russell* v. *Woodward* 10 Pick. 408; where it is assumed that, as fast as creditors become parties to a deed of assignment for the benefit of creditors, the trust in their favor is made operative, even against attaching creditors who are not parties, and who are, by consequence, not bound by the assignment in its original form; *Edwards* v. *Mitchel*, Supra, and other cases, 1 Gray.

And upon careful reflection, I must say that, such a doctrine seems to me altogether consonant to the statute, to the strictest principle, and every way salutary in its operation.

It is certainly not uncommon, where a contract or proceeding is in terms declared void, as to particular persons, to construe this as synonymous with voidable or inoperative. This is one of the ordinary significations of the term, and more natural than any other, when applied to a subject matter of this kind. These assignments are made inoperative, or in popular language void, as to particular persons. It is obvious, if all the creditors assent, the defect is cured. It could not, with any show of reason, be claimed that, if all the creditors became parties to the instrument, whether by deed or parol, that they would not be bound by it, or that they might, after the trustee had gone on in faith of the arrangement, and collected the fund, and was ready to distribute, any one or more of them, recede from their contract, and hold the property by attachments. This ought not to be so. As is said in *Edwards* v. *Mitchel*, the principle, *volenti nor fit injuria,* applies to such assent. And if the assent of all makes it binding, it is difficult to see why the assent of any less number must not have the same effect, as to them. And this making it binding upon these creditors, it is binding upon the other creditors, if it be such a disposition of the effects as the creditor has a right to make.

The contract, here relied upon, is nothing more than the assignment of property, for the security of certain sureties who, in faith of this assignment, have assumed the debts and paid them. This is certainly such a contract as the law recognizes. It is nothing more than preferring certain creditors, by way of mortgage or pledge of personal property. And the fact that it is done, as to the debtor, by this instrument which, until assented to by the creditors, is voidable by them, will make no difference. It is good to divest the debtor of the property; and, when assented to by the creditor, it is good as to him, and binds the trustee to retain the property, and faithfully to execute the trust, unless his contract is within the statute of frauds; and we have no difficulty upon this point. The undertaking of the trustee is an original undertaking, upon a new consideration, and, in no sense, for the debt of another. He promised to keep the property for the claimants security. Nobody else

had assumed any similar undertaking. This was not a collateral promise. If it were, a third person who undertakes to keep property of one person, to save a debt to another, could never be called to an account, unless the undertaking was in writing. But no one ever entertained any such belief. There is no duty upon the trustee which is not new and original, and without any other similar duty upon another, to which it is collateral. The case of a trustee who owes a debt to the principal debtor and promises, by parol merely, and without any new consideration, or being released by the principal debtor, to pay it to the claimant, is certainly not, in any sense, analogous to the present.

It will be obvious, that the view here adopted is possibly, to some extent, at variance with one line of argument adopted by me, in my opinion in *Mussey* v. *Noyes & Co.* But I have no occasion here to vindicate the correctness of what I may have said in that case. I adopted the view of the New York cases upon that subject, as I there say, contrary to my convictions of the justice and propriety of the case ; and if the view we now take is, in any sense, in conflict with any of the views there put forth, which is not altogether certain, I must say, that the New England cases upon this subject, to the extent necessary to be here adopted, seem to us altogether sound. And had precisely the same view been taken of the subject in *Noyes* v. *Mussey*, the result must there have been the same, in all respects, that it was.

This case may very properly be decided upon the views adopted in *Bradley & Co.* v. *Dow & Trustees*, one year since, in this county, that as the plaintiffs here attempt to charge the trustee under the statute, they recognize the assignment from the debtor to him, as creating a valid trust, sufficient to enable him to hold the property under the statute; and while they attempt to charge the trustee under the statute, they must be content to allow him all the rights which the statute accords to him, one of which is to retain enough to pay what the principal debtor owes him. And no question has ever been made, that he might, under this provision, retain any amount of property or money which he had become legally bound to pay to any third party, on account of the principal debtor, before the service of the trustee process.

It would seem, from the finding of the court upon the issue

joined, that a sufficient trust, in favor of the claimants, was created by the contract of the parties, altogether independent of the assignment, to bind the trustee to hold the property for them. But we think it not very material, whether the trust is under the assignment, or independent of it. The creditors, all of them, so long as they acquiesce in the doings of the assignee, ought to be bound by it; and they must also be bound by any new and legal obligations which the assignee shall assume after the assignment, and before the service of the trustee process as much as by his proceedings under the assignment.

We have not been able to discover any sufficient reason, why the decision of the county court, in admitting the claimants to become parties to the suit, was not in strict compliance with the statute. "If it shall appear that any goods, effects or credits in the hands of any supposed trustee are claimed by any other person, by force of an assignment of the principal debtor, or otherwise, the court may permit such claimant to appear."

Judgment affirmed.