## A. J. ROBERSON ET AL. V. C. J. TONN.

### No. 2612.

**1. Parties—Guardian and Ward.**—In an action brought by the ward after attaining his majority on the bond executed by the guardian (who after insolvency had died), it is not necessary to make the county judge a party. When the bond was given for the faithful performance of duties as guardian for two minors, and the guardian was discharged from the guardianship of one of them, in a suit against the sureties by the other the minor who was relieved from the guardianship is not a necessary party.

**2. Guardian's Bond.** — A guardian's bond executed under the statutes for the guardianship of the estates of two minors is not affected by the order of court discharging the guardian from the control of the estate of one of his wards; it may be enforced at the suit of the other ward against the sureties alone.

**3. Partnership.**—The separate estate of one partner is as fully liable for partnership debts as for his own personal obligations; although as between partners the firm assets constitute the primary fund for satisfaction of firm debts.

**4. Same—Sureties.**—When the money of the ward is loaned by the guardian to a firm composed of the guardian and one of the sureties on his bond, such surety became a principal debtor as between himself and his cosurety, from whom the cosurety after payment of the debt would be entitled to recover all he paid.

**5. Guardian and Ward.**—A guardian and one of the sureties on his guardian bond were partners in a banking house. As such they borrowed in the firm name the ward's money, and failing, made an assignment of all partnership assets and of the individual property of the surety. The guardian died leaving no individual estate. Another guardian was appointed, who presented to the assignee the claim of the estate made out against the insolvent firm, and received a dividend, and the ward also after his majority received dividends. In a suit by the ward after attaining his majority and against the surety, *held*, that if the surety was discharged on the claim presented to the assignee against the firm, but which represented the debt for which the guardian was liable, he was discharged in toto. If thus discharged his cosurety is also discharged, for the surety member of the failing firm having become, as between himself and his cosurety, a principal debtor, his discharge defeats the right of his cosurety to subrogation, which can not be taken away without releasing him from further obligation.

**6. Same—Assignment.**—One who receives dividends under an invalid assignment is precluded from controverting its validity.

APPEAL from Washington. Tried below before Hon. I. B. McFarland. The opinion states the case.

*Bassett, Muse & Muse,* for appellants. — 1. Both Theo. Tonn and the county judge being parties to the bond, the one as trustee vested with the legal title, and the other as one of the *cestuis que trustent* interested in the equitable estate, were necessary parties to the suit. Subject to exceptions, none of which are presented here, the rule is that all persons materially interested, either legally or beneficially, in the subject matter of the suit must be made parties to it. Hall v. Harris, 11 Texas, 303; Speake v. Prewitt, 6 Texas, 257; Stachely v. Pierce, 28 Texas, 335; Farin v. Tesson, 1 Black, 309; 1 Chit. Plead., 17 ed., 9; Story's Eq. Plead., sec. 72.

2. The liability of the sureties on the bond was limited to their prin-

cipal's acts with reference to the joint estate of Theodore and Julius Tonn, and such liability ceased when the joint estate, having been accounted for, ceased to exist and the guardian was discharged of his trust with regard thereto. The obligation of the sureties for the guardianship of the joint estate can not be extended by implication so as to cover the acts of the guardian in respect of the separate estate of Julius Tonn, there being no identity of the two obligations or estates. The sureties have a right to stand upon the very terms of their contract. They are bound to the extent and in the manner and under the circumstances pointed out in their obligation, and no further; and not having assented to any change in the character or form of their contract, they are not bound thereby. Miller v. Stewart, 9 Wheat., 681; Life Ins. Co. v. Bowler, 4 Myer's Dec., sec. 645.

3. It is irrelevant to argue that the sureties have sustained no injury, or even that they have benefited by the change of their obligation or liability. The answer is that it is not the contract which they made. Lane & Saylor v. Scott, 57 Texas, 367, 370, 371; Miller v. Stewart, 9 Wheat., 681.

4. The appellee having received from the assigned estate of B. H. Bassett a portion of his claim, is conclusively held to have assented to said B. H. Bassett's assignment. Rev. Stats., App., p. 6, sec. 5.

5. The act of the guardian in lending the money to Bassett & Bassett, though unauthorized, was such as was susceptible of ratification, and it was ratified by the plaintiff's acceptance of a dividend out of their assigned estate, and he is estopped to deny its validity, having accepted its benefits.

6. The liability of B. H. Bassett as surety on the guardian's bond, and that of Bassett & Bassett for the deposit, were such debts as could properly be brought into the assignment. Mills v. Swearingen, 67 Texas, 272.

7. The plaintiff having gone into the assignment, which stipulated for the release of B. H. Bassett, can not proceed against him in this action. Mills v. Swearingen, 67 Texas, 272.

8. Under the deposit and agreement Bassett & Bassett became liable to pay to the guardian and his successor, to the plaintiff's use, and to the plaintiff himself on his attaining his majority, the money deposited, with interest. The deposit, though unauthorized, was not void. It was such an act as might be and was ratified by the subsequent conduct of the plaintiff after coming of age in taking the benefits of the assignment and securing a dividend out of the assets of Bassett & Bassett, to which he would not otherwise have been entitled.

9. While to the obligee in the bonds the defendants Roberson and B. H. Bassett were each liable for the entire debt, yet as between themselves for purposes of contribution each is regarded as the principal debtor for that part of the debt which he ought to pay, and as surety for his co-

debtor as to so much as ought to be discharged by him. McGee v. Russell, 4 S. W. Rep., 285. In this respect their mutual relation is not different from that of principal obligors, in regard to whom it is familiar law that the one is discharged by the release of the other, and this solely on account of their mutual liability to contribution. McIlhenny Co. v. Blum, 68 Texas, 197.

10. If not discharged as to the whole debt, he was at least discharged as to one-half of it. Gordon v. Moore, 44 Ark.

*Searcy & Garrett* and *Bryan & Campbell*, for appellee. — 1. It was neither necessary nor proper to make either the county judge or Theodore Tonn a party to this suit. Fort v. Fitts, 66 Texas, 594; Love v. Keowne, 58 Texas, 191; Brown v. Seaman, 65 Texas, 630; Stephenson v. McFaddin, 42 Texas, 327; McNutt v. Bland, 2 How., 9; Brandt on Surety. and Guar., sec. 491.

2. The liability of appellants as sureties on the bond of Jefferson Bassett as guardian of the estate of the minors Theodore Tonn and C. J. Tonn was not discharged by the subsequent discharge of said guardian as to the guardianship of the said Theodore Tonn. They became sureties for the faithful discharge of the duties of said guardian according to law; and the settlement with and the discharge as to said Theodore were in accordance with law and in the due administration of the estate of said minors in this court; and when said guardian was discharged as to said Theodore, he had only so far complied with the condition of said bond. 3 Wait's Act. and Def., 538; Keowne v. Love, 65 Texas, 157.

3. B. H. Bassett was not discharged from liability on the bond by reason of his assignment for creditors and the acceptance of dividends thereunder by the appellee, because—

(1) It was the duty of the guardian to collect. Rev. Stats., art. 2546.

(2) The liability of B. H. Bassett on the bond was not a provable claim under the assignment. Brandt on Surety. and Guar., sec. 240; Dunn v. Sparks, 50 Am. Dec., 473.

(3) Acceptance of the assignment as to the claim against Bassett & Bassett did not release B. H. Bassett of his liability on the bond of the guardian. Kaufman & Runge v. Hudson, 65 Texas, 716; Hardware Co. v. Kaufman, 8 S. W. Rep., 283.

(4) One-third of the amount due and allowed has not been paid, as will appear by computation. The claim draws interest from January 1, 1885. Sayles' Civ. Stats., art. 65c.

(5) Assignment by one member of a firm void. Baylor County v. Craig, 69 Texas, 330.

4. B. H. Bassett was not discharged. Authorities *supra.*

(1) A surety has the right to have securities in the hands of creditors

prosecuted for his benefit.    Sublett v. McKinney, 19 Texas, 438; Jordan v. Hudson, 11 Texas, 82.

(2)   Release under bankruptcy proceedings does not have the effect to discharge a surety.   Brandt on Surety. and Guar., sec. 126; 3 Harrison's Index, 2065; 1 Poth. Obligations, ed. 1839, 185; 2 Id., 55, 56, citing Dean v. Newall, 8 Term R., 168; 2 Id., 64, citing Wright v. Hunter, 1 East., 20; Bank v. Dillon, 73 Am. Dec., 297, note; Dunn v. Sparks, 50 Am. Dec., 474.

(3)   A surety is not discharged by the release of a cosurety.   Bridges v. Phillips, 17 Texas, 130, and authorities; 1 Poth. on Obligations, ed. 1839, 313.

(4)   Extent of release in any event.   Glasscock v. Hamilton, 62 Texas, 150, 168; 7 Wait's Act. and Def., 460; Brandt on Surety. and Guar., sec. 383, note 3.

STAYTON, CHIEF JUSTICE. — We concur in the holding of the court below that neither Theodore Tonn nor the county judge were necessary parties to this action; and in the further holding that the bond given to secure the faithful discharge of the duties of the guardian of the estates of Theodore and C. J. Tonn was binding on the sureties as fully, in so far as the right of appellee is concerned, after the discharge of the guardian from further liability to his ward Theodore as was it before.

The other questions arise on the following facts:

In July, 1877, Jefferson Bassett was appointed guardian of the estates of Theodore and C. J. Tonn, and to secure the faithful discharge of his duties he executed a bond on which A. J. Roberson and B. H. Bassett were sureties.

On March 16, 1881, there was in the hands of the guardian belonging to his ward C. J. Tonn the sum of $2000, which, without compliance with law, he on that day loaned to the banking firm of Bassett & Bassett, composed of the guardian Jefferson Bassett and the surety B. H. Bassett.

To evidence this transaction a certificate of deposit, payable one year after its date and bearing six per cent interest per annum, was executed to the guardian by the banking firm.

On January 1, 1885, the guardian filed an account with his ward, which showed an indebtedness at that time to his ward's estate amounting to $1882.45, which embraced interest on the certificate of deposit.

On May 25, 1885, the guardian died without having restored this sum to his ward's estate, and without leaving any estate other than partnership effects subject to the payment of debts.

Three days after his death B. H. Bassett, the surviving partner and surety on the guardian's bond, made an assignment, in the form required by the statute, of all the partnership property of the firm of Bassett & Bassett and of himself subject to forced sale, for the benefit of such of

the creditors of the firm and of himself as would consent to take under it and release him.

The deed of assignment was signed by the assignees, who qualified under it and proceeded to administer the trust estate in accordance with the provision of the statute regulating assignments for the benefit of creditors.

On the 26th of September, 1885, George Roberson was duly appointed guardian of plaintiff's estate, and afterwards, on the same day, duly accepted of the assignment and presented to the assignees an account properly authenticated against the estate of Bassett & Bassett for $1882.45 and interest from January 1, 1885, balance then due his ward, as per exhibit of guardian filed that day. The account was duly allowed by the assignees.

Upon this claim two dividends were paid, which amounted to thirty-five per cent of the claim presented, and it is shown that dividends amounting to fifty per cent of the claim will probably be paid.

Roberson, guardian, received from the assignees a dividend of thirteen per cent on the claim of his ward, and the latter, after he became of age, through his attorneys received another amounting to twenty-two per cent of his claim.

The court found that "the dividend of $414.10 was paid to plaintiff's attorneys, Garrett, Searcy & Bryan, who thereafter paid the same over to plaintiff, said attorneys having full knowledge of all the facts concerning the assignment. Plaintiff also received through his said attorneys all of the first dividend above named, except amount reserved to meet court expenses of guardianship."

The inference from the record is that some further payment would be made from the assigned estate.

This action was brought by the ward against sureties on his first guardian's bond, and the court held that each of the sureties was liable for the full amount of the guardian Bassett's indebtedness, less such sum as had been received from the assignees.

The court further held that it was unnecessary to determine whether the assignment was valid as an assignment under the statute or at common law; for be that as it might, the "plaintiff has estopped himself from raising the issue by acquiescence in and accepting dividends under the assignment."

The court, however, did hold that on account of the separate sources of obligation resting on B. H. Bassett he was not released from individual liability as surety by reason of the fact that appellee had accepted under the assignment.

The court gave two reasons for this holding:

"1. Because that liability and the amount thereof, if any, at the time of the assignment, and for more than six months thereafter, was uncertain and contingent and not a provable claim in bankruptcy."

Was it true that the claim was of such nature as could not be allowed by the assignees?

The claim which was presented and allowed was in amount the same as made the basis of the judgment in this case, and B. H. Bassett was liable for it as surety, as was he as a member of the firm of Bassett & Bassett.

His dual liability existed from the moment his firm received the money, for in the act of lending his principal committed a devastavit, and in the act of borrowing he became individually liable, notwithstanding the firm of which he was a member, as between themselves, were jointly bound.

We do not see wherein his individual liability was in anywise uncertain or contingent.

Whether it would become necessary to resort to his individual liability to secure the debt may have been uncertain, but there was neither such uncertainty nor contingency as to his liability as would have precluded the allowance of every claim that at any time might be asserted against him as surety or partner.

The second ground was "because his liability as surety is of a separate nature, and against himself individually, and was primarily a demand against his separate estate in the hands of the assignees in case it could have been and had been proved up, while the claim actually proved up and allowed by the assignees was against Bassett & Bassett and arose out of a copartnership transaction and was a demand primarily against the copartnership assets, and represented an amount which did not necessarily and probably does not indicate the amount of B. H. Bassett's individual liability."

It appears that all the separate estate of B. H. Bassett subject to forced sale passed by the assignment, as well as the partnership property, and that of the former more than sufficient to pay all sums due to appellee went into the hands of the assignees, but that notwithstanding this no one solely an individual creditor of him presented a claim.

All the property to which creditors of any class could look was placed subject to their demands, and if under an assignment it were true that the individual creditors of B. H. Bassett had a right superior to that of creditors of the firm to have satisfaction of their claims out of his separate estate, it would seem that this was a case in which such a right might and ought to have been asserted, if it was not.

No such right, however, is recognized, for the separate estate of one partner is as fully liable for partnership debts as for his own personal obligations, although as between partners the firm assets constitute the primary fund for satisfaction of firm debts. The claim actually proved and allowed by the assignees on which dividends were received was identical with that on which the judgment in this action on the guardian's bond is based.

In the one case as in the other the admitted liability to appellee shown by his guardian's report of January 1, 1885, is made the claim; and for its payment all the property in the hands of the assignees was liable just as fully as though there had been one claim made with all technical precision on the suretyship of B. H. Bassett and another on the certificate of deposit.  The claim presented to the assignees was as follows:

"*Bassett & Bassett to Geo. B. Roberson, guardian of estate of the minor C. J. Tonn.*

"To amount of balance due the minor January 1, 1885, as per exhibit of Jefferson Bassett, former guardian, filed January 1, 1885, in County Court of Washington County, Texas, $1882.45, said amount bearing interest from January 1, 1885."

Although the amount was made up against the firm, both members of which were separately liable for the entire sum due, there is nothing to show that the claim thus asserted was not the identical claim now asserted. The amount is the same, except as to some interest which rests on the holding that the guardian should be charged with a higher rate of interest than the certificate of deposit promised; it was made against a fund in the hands of the assignees, one part of which was as much subject as the other to its payment; and there is no evidence that the guardian who presented and had it allowed, or the assignees who allowed and paid dividends on it, had any knowledge whatever when the dividends were paid that any liability on the part of the firm of Bassett & Bassett or of B. H. Bassett other that now sued on existed.

As between appellee and the firm of Bassett & Bassett and B. H. Bassett it was but one debt, though evidenced by two papers, for which their partnership as well as separate estates were liable; the payment from either would satisfy appellee's claim against both, and there would be no equities to adjust, unless between the partners themselves or their representatives, however it might be paid.

Under the obligation imposed on appellants as sureties on guardian's bond, one of them, on payment by him of sum due to ward, would be entitled only to contribution from his cosurety; but when the money was loaned to Bassett & Bassett the surety Bassett, as between himself and cosurety on guardian's bond, became a principal debtor, from whom the other surety, on payment of the debt, would be entitled to recover all he paid.

B. H. Bassett became primarily liable to the ward—as to his cosurety a principal—having through the firm of which he was a member borrowed and had the benefit of the ward's money, for which both sureties were liable.

Having thus become a principal debtor, if he has been released, then his cosurety is as clearly released as would he be had appellee in some way voluntarily released the guardian whose sureties both were.

This is not a case in which a cosurety only has been released, but one in which, in effect, a principal has been discharged, whereby the right of cosurety Roberson to subrogation, if he shall pay the debt, has been destroyed.

It is very generally held that the discharge of a principal by the act of the law, as in cases of discharges in bankruptcy or under insolvent laws compulsory in character, does not discharge a surety, but this rule has no application to cases in which the discharge of the principal depends on the volition and act of the creditor.

"The discharge of a principal which discharges a surety must be a discharge by some act or neglect of the creditor, and a discharge by operation of law, being as it is against the consent and beyond the power of the creditor, does not discharge the surety."

Looking to the facts, it seems to us that the claim of dual character of indebtedness by B. H. Bassett is based on distinctions which can have no bearing on the merits of the present controversy.

It is true that B. H. Bassett was bound by the existence of two states of fact, but under each of these he was bound for the same debt, and a payment by him as principal or surety would discharge it.

There can be no pretense that the claim presented to assignees, approved and dividends thereon paid, was not in form a claim sworn to be due from Bassett & Bassett, nor can it be denied that this was the very claim or debt for which the sureties were liable.

If B. H. Bassett was discharged on that claim he is discharged in toto. If he is thus discharged then his cosurety is discharged, for B. H. Bassett, as between himself and cosurety, having become a principal debtor, his discharge defeats the right of his cosurety to subrogation, which can not be taken away from him without releasing him from further obligation.

Under the findings of the court below we are relieved from consideration of the question whether a guardian may consent to take under an assignment and release the debtor on payment of only a part of the debt, for it appears that appellee after he became of age, with full knowledge of what had occurred under the assignment, received the dividends paid.

It is not shown that any fact material for him to know was concealed from him or unknown to him, nor that any fraud was practiced to induce him to receive the dividends.

If the guardian had power to bind him he is bound; and if the guardian had not power so to bind him his own act does.

If he did not intend to be bound by his guardian's act he ought not to have received the fruits of it, but should have repudiated it instead of receiving the dividends. Having received these, he must be held to have ratified the act of his guardian. He seems to have acted under advice of counsel.

It is very generally if not uniformly held that one who takes dividends

under even an invalid assignment is precluded from controverting its validity in its entirety. Wallace v. Cumming, 27 La. Ann., 631; Burrows v. Alter, 7 Mo., 424; Moale v. Buchanan, 11 Gill & J., 326; Howe v. Henriquez, 13 Wend., 241; Raburn v. Yard, 1 Rawle, 163; Fiske v. Carr, 20 Me., 301; Rapalle v. Stuart, 27 N. Y., 310; Varnum v. Evans, 2 McMullan, 409; Richards v. White, 7 Minn., 271; Merrill v. Englesby, 28 Vt., 156; White v. Banks, 21 Ala., 706; Frierson v. Branch, 30 Ark., 454.

This, as held by the court below, renders it unnecessary to consider the validity of the assignment.

The facts proved showing that B. H. Bassett had been released, no judgment could be legally rendered against either of appellants, and as the case was tried without a jury, on the finding of the facts the judgment of the court below will be reversed and here rendered for appellants.

*Reversed and rendered.*

Delivered March 11, 1890.