KUNZ et al. v. RAGSDALE et al.   (No. 5912.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1917. On Motion for Rehearing, Jan. 23, 1918.)

1. VENUE ⊚⟹22(1)—COUNTY OF RESIDENCE—CODEFENDANTS.

Suit was properly brought against all defendants in the county of one defendant's residence, unless there was a misjoinder of parties and causes of action.

2. VENUE ⊚⟹22(3)—CHANGE—MISJOINDER OF PARTIES AND CAUSES OF ACTION.

If there is a misjoinder of parties and causes of action, the suit being brought in the county of one defendant's residence, the transfer of the entire case to another county in which another defendant resides is erroneous, because the court will necessarily sustain the plea of misjoinder when the case is called for trial, and require an election by plaintiffs of which cause they will prosecute; and, if they should elect to prosecute the suit against the first defendant, she would file a plea of privilege to be sued in the county of her residence, where the suit originally was brought.

3. ACTION ⊚⟹50(4) — SUIT AGAINST GUARDIANS—MISJOINDER OF PARTIES AND CAUSES OF ACTION.

Where plaintiffs show they are entitled to a certain estate as minors which has been administered by two guardians, and that one or both of such guardians are liable to plaintiffs, and that there will be a controversy between the guardians, each contending it was the fault of the other which caused the loss to plaintiffs, plaintiffs are not required to bring separate suits.

On Motion for Rehearing.

4. GUARDIAN AND WARD ⊚⟹72—SUCCESSIVE GUARDIANS—LIABILITY.

Under Rev. St. 1911, art. 4204, charging the successor of a guardian with responsibility for the entire estate which came into the hands of his predecessor, the only way in which the successor guardian can escape liability to his wards is to show that he has been unable to collect from persons liable to the wards' estate, and from the estate of the first guardian and his bondsmen, though he exercised due diligence.

5. GUARDIAN AND WARD ⊚⟹56 — LIABILITY OF GUARDIAN FOR WARDS' MONEY LENT.

Where a guardian made loans of his wards' money without authority from the court, and never reported the loans to the court, and made them without taking lawful security, he was liable for the money loaned, if lost to the wards.

6. GUARDIAN AND WARD ⊚⟹130—ACTION BY WARDS—PLEADING.

In a wards' suit against their guardian and his successor and others as their sureties, as against general demurrer, averments that the first guardian negligently made deposits of the wards' funds without any authority from the county court, and continued the deposits negligently when he knew, or could have known, by due diligence, that the deposits were liable to be lost was sufficient to charge liability; it being alleged that the funds were never recovered.

7. GUARDIAN AND WARD ⊚⟹72—LIABILITY FOR LOSS OF DEPOSIT OF WARDS' MONEY—RELEASE.

The act of the second guardian of minors in undertaking to deal with the depositary with whom the first guardian had left their funds as to part of the indebtedness did not release estate of the first guardian, the second guardian's husband, or his sureties, from liability for loss of the deposit.

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Suit by Victoria Kunz and others against J. W. Ragsdale and others. From a judgment for defendants, plaintiffs appeal. Judgment reversed, and cause remanded.

T. B. Smiley, of Karnes City, and Faith & Murray, of Runge, for appellants. Fly & Ragsdale, of Victoria, for appellees.

MOURSUND, J. Appellants, Victoria Kunz, joined by her husband, Frank Kunz, Agnes Malik, Genovefa Hahn, joined by her husband, Raymond Hahn, Frantiska Malik, and Joseph Malik, the last-named two, minors, being represented by Agnes Malik, as next friend, sued J. W. Ragsdale, D. A. Paulus, Mary Malik, and the American Surety Company of New York to recover $1,030.47, alleged to be the proportionate part belonging to plaintiffs of certain sums loaned by A. Malik, the first guardian of plaintiffs which loans were not collected but renewed by Mary

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Malik, their second guardian, who was appointed after the death of A. Malik. It was alleged that defendants Ragsdale and Paulus are sureties on the guardian's bond of A. Malik, and the American Surety Company is the surety on the guardian's bond of Mary Malik. The two bonds are copied in the petition. It was further alleged that the loans were made to A. F. Toman, without any authority from the probate court, and without exacting the security required by law, and the money negligently left with him until he became insolvent, and that the money was thereby lost to appellants. It was also alleged that the exact date when Toman became actually and notoriously insolvent was not known to plaintiffs; that A. Malik acted negligently in making the loans, and that Mary Malik, knowing that the funds were illegally in the hands of Toman, and that he was financially distressed, and that the funds were likely to be lost if left in his hands, continued to leave same in his hands and made no effort to recover the same, and in fact renewed the loans.

Defendants Ragsdale and Paulus filed pleas of privilege to be sued in the counties of their respective residences, and pleaded misjoinder of parties and causes of action. The court, without making any order with respect to the pleas of misjoinder, sustained the pleas of privilege, and transferred the entire case to the district court of De Witt county, the county in which defendant Paulus resides.

[1, 2] It is evident that, as Mary Malik resides in Karnes county, the suit was properly brought in that county against all parties, unless there is a misjoinder of parties and causes of action. If there is a misjoinder, the transfer of the entire case was erroneous because when it is called for trial the court will necessarily sustain the plea of misjoinder, and require an election by plaintiffs of which cause they will prosecute. If plaintiffs should elect to prosecute the suit against Mary Malik, she would promptly file a plea of privilege to be sued in the county of her residence. The question of misjoinder should have been determined first in order to protect the rights of all the parties, for if sustained the plaintiffs would have the privilege of going on with their suit against Mary Malik.

[3] However, we are of the opinion that the exceptions urging misjoinder are not well taken. The pleadings are not as complete as they should be, but plaintiffs show that they are entitled to a certain estate which has been administered by two persons, and that one or both of them are liable to plaintiffs; that there will be a controversy between defendants, each contending that it was the fault of the other which caused the loss to plaintiffs. We do not believe that under our system plaintiffs are required to bring separate suits. In the case of Love v. Keowne, 58 Tex. 191, Judge Stayton laid great stress upon the proposition that the joinder in that case should be permitted for the full protection of the plaintiff. In this case it seems very clear that the full protection of the plaintiffs can only be obtained by joining all of those upon whom the responsibility rested for the administration of plaintiffs' estate. In Love v. Keowne, supra, the court said:

"It has been found impracticable to lay down any positive general rule as to what will or will not constitute multifariousness, but the courts have wisely left the question, as one of convenience, to be decided according to the peculiar circumstances of the case. As said by McLean, J., in Gains v. Chew, 2 How. (U. S.) 619 [11 L. Ed. 402], 'Every case must be governed by its own circumstances; and as they are as diversified as the names of the parties, the court must exercise a sound discretion on the subject.' It is said in the notes to the leading case of Fellows v. Fellows, 4 Cowen [N. Y.] 682, in 15 Am. Decisions, 428, that perhaps the best general rule that can be laid down is that stated by Wilde J., in Dimmock v. Bixby, 20 Pick. [Mass.] 377, that the objection of multifariousness does not hold 'where one general right is claimed by the plaintiffs, although the defendants may have separate and distinct rights.' "

In support of our conclusion in this case we cite the following cases in addition to the case quoted from as illustrative of the liberality of our system with respect to avoiding a multiplicity of suits: Skipworth v. Hurt, 94 Tex. 322, 60 S. W. 423; Railroad Co. v. Graves, 50 Tex. 202; Sun Ins. Office v. Beneke, 53 S. W. 98; Muncy v. Mattfield, 40 S. W. 345; Moore v. Bldg. Ass'n, 19 Tex. Civ. App. 68, 45 S. W. 974; Finegan v. Read, 8 Tex. Civ. App. 33, 27 S. W. 261.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

It has been held that upon the death of a guardian the relation of the ward to the estate of his former guardian is that of debtor and creditor, and that upon the appointment of another guardian by the probate court it is without jurisdiction to adjudicate the matters between the ward and the estate of the former guardian. American Bonding Co. v. Logan, 132 S. W. 894.

[4, 5] If a second guardian is appointed, that guardianship ceases when the ward becomes of age, and such ward could then sue upon the bond of the first guardian for waste committed by the first guardian. Hix v. Duncan, 99 S. W. 422. Suits of that character were sustained in the two cases hereinbefore cited, thus demonstrating that our statutes do not have the effect of releasing the estate and sureties of a deceased guardian from liability to the heirs upon the appointment of another guardian. Upon the appointment of the successor, our statute (article 4204, Rev. St. 1911) charges him with responsibility for the entire estate which came into the hands of his predecessor, and the only way in which he can escape liability is to show that he has been unable to collect the same or part thereof from persons liable to the estate of the minors and from the

estate of the first guardian and his bondsmen, although he exercised due diligence. In this case the petition alleges, in substance, that A. Malik made the loans to Toman without authority from the court, and had never reported same to the court, and had made such loans without taking security in the manner prescribed by law. The guardian is liable for money thus loaned if it is lost. Roberson v. Tonn, 76 Tex. 535, 13 S. W. 385; Freedman v. Vallie, 75 S. W. 322.

[6] It is further alleged that A. Malik made certain deposits of funds with Toman without any authority from the county court, and that he made the same negligently, and continued the same negligently when he knew, or could have known by the use of due diligence, that the same were liable to be lost to the minors. As against a general demurrer, at least, such averments were sufficient to charge liability, it being alleged that the funds were never recovered from Toman. Murph v. McCullough, 40 Tex. Civ. App. 403, 90 S. W. 69; American Surety Co. v. Hardwick, 186 S. W. 805. The petition showed that Mary Malik had never recovered the money from Toman, and had renewed loans to him to the extent of $735, from which allegations, and the general allegation with regard to loss of funds, the intendment can reasonable be indulged that the money due by Toman was not paid to Mary Malik by the estate of A. Malik or the sureties on his bond. It is not alleged that any accounting took place between Mary Malik and the estate of her husband and his sureties; and, as she is interested in the community estate held by her deceased husband, it would seem that any accounting other than the actual procurement of the funds might be contested by her surety, and by the wards.

[7] It is alleged that she undertook to deal with Toman as to part of the indebtedness, but this would not release her husband's estate or his sureties. It is also alleged that she dealt negligently in regard to the matter. We are not prepared to say that such negligence under the facts of this case, or under any facts, would release the sureties of her husband from liability to the wards, but suppose that it would do so, provided the negligence resulted in the loss of the loans and deposits, which might be the case if Toman was solvent and the money could have been collected after she became guardian. In this case it is alleged that plaintiffs are unable to say when Toman became insolvent; that is, even under the theory that the sureties might become released by her negligence, the facts pleaded merely show that plaintiffs do not know whether or not the sureties of A. Malik have a defense to the suit.

As the statute makes Mary Malik liable for the same debt alleged to be due by the sureties of A. Malik, it appears that the petition makes out a prima facie case against all the defendants for the same debt. Plaintiffs can only collect their debt once, so it is eminently proper that they join in one suit all who are asserted to be liable for such debt. The fact that under our statutes and under the averments of the petition there are matters to be adjusted between the sureties of A. Malik and Mary Malik adds weight to the conviction that there is no misjoinder, for if the allegations be true, in all probability, had plaintiffs sued only Mary Malik and her surety, they would have impleaded the sureties of A. Malik. We believe the following language of Judge Stayton, in Love v. Keowne, 58 Tex. 201, is peculiarly applicable to this case:

"The breach of each of the bonds doubtless constitutes a cause of action against the makers of the several bonds, ordinarily separate and distinct; but the relation of two sets of sureties may be such to the subject-matter of litigation, which in this case is the estate, that came into the hands of the administrators, that they may be joined in one action, and in which it may become eminently proper that all the sureties should be joined, not only for the protection of those interested in the estate, but also for the purpose of adjusting the equities existing among the sureties themselves. In a court of equity this is always desirable, in order to do complete justice between all parties without a multiplicity of suits."

It is true in that case the two sets of sureties had the same principal, but in view of the manner in which our statutes connect up the two guardianships and of the construction placed on our statutes by our decisions, it was just as proper to join the sureties of Malik with Mrs. Malik and her surety as it was to join both sets of sureties in the case quoted from.

The motion for rehearing is overruled.