**Anne-Marie GABRIEL & Fidelity and Deposit Company of Maryland, Appellants,**

v.

**Richard S. SNELL, Successor Guardian of the Estate of Randall Bentley Dawson, Appellee.**

**No. A2556.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 25, 1981.

David N. Williams, Houston, for appellants.

Tim S. Leonard and Steven B. Harris, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and MURPHY, JJ.

MURPHY, Justice.

This is an appeal by a surety from a judgment by the probate court, sitting without a jury, holding a predecessor-guardian and her surety jointly and severally liable for the amount of an unapproved loan and interest thereon from the date of the loan in a suit by the successor-guardian for mismanagement and waste of the ward's estate.

Anne-Marie Gabriel (Gabriel) was appointed guardian of the persons and estates of Randall Bentley Dawson (Randall) and Roy Elliott Dawson (Roy), minors, on October 18, 1966. On March 17, 1975, Fidelity and Deposit Company of Maryland (Fidelity) entered into a suretyship bond agreement in the amount of $54,000.00 to assure the proper performance by Gabriel of her guardianship duties to the persons and estates of both minor wards. On April 18, 1975, Gabriel loaned $15,000.00 at 6% interest to Business Controls, Inc. and Cecil C. Stoffer, without obtaining court approval or security for the loans. She listed the loans as assets of Randall's estate, categorized as notes receivable, in her annual account for the year ended May 25, 1975. The account was filed on April 8, 1976. There was evidence that Gabriel notified Higdon Compton, an agent of Fidelity, by telephone of the loan and its nature within one week after the loan was made. Fidelity did not respond to the oral notice. No portion of principal or interest was collected on the loan.

On December 1, 1976, Gabriel was discharged as guardian of Roy's person and estate. Roy had reached the age of majority. Randall was still a minor at that time. Gabriel's application for discharge was entitled "APPLICATION TO CLOSE GUARDIANSHIP OF *ROY ELLIOTT DAWSON* AND TO DISCHARGE GUARDIAN" (emphasis added). The text of the application referred only to Roy's guardianship. The order discharging Gabriel as Roy's guardian and closing Roy's estate reads as follows:

## ORDER CLOSING ESTATE AND DISCHARGING PERSONAL REPRESENTATIVE

On this day the Court heard and considered *the Application to Close Estate and Discharge Representative*, filed by Guardian of the Person and Estate in this cause, and after hearing the evidence in support of such application, the Court finds that *this Estate* has been fully administered; that the account for final settlement has previously been approved; that the distribution of property on hand has been ratified; and that *this Estate* should be closed.

It is therefore, ORDERED, ADJUDGED, and DECREED that [Anne-Marie Gabriel], Guardian of the Person and Estate of *this cause*, is hereby discharged from *this trust*; that Fidelity and Deposit Company, surety on the bond of the Guardian is hereby discharged from further liability *under such bond*; and *this Estate* hereby declared to be closed (emphasis added).

Gabriel continued to act as Randall's guardian until September 15, 1978, when she was removed on her own request. Richard S. Snell was appointed successor-guardian. On September 28, 1979, Snell filed suit in the probate court against Gabriel and Fidelity to recover the loan proceeds and accrued interest. The petition alleged mismanagement, waste, and improper accounting of Randall's estate by Gabriel and joint liability of Fidelity, as surety on the bond. The court entered judgment for Snell, as Randall's guardian, holding Gabriel and Fidelity jointly and severally liable for $20,208.05—the amount of the loan, accrued interest at a rate of 6% per annum from the date of the loan, costs and attorney's fees.

■ Fidelity appeals, contending (1) the December 1, 1976 order closing Roy's estate explicitly discharged Fidelity from all liability under its bond of March 17, 1975 and, therefore, Snell's suit was barred by the doctrine of res judicata; (2) if Fidelity is liable on the bond, it cannot be held liable for interest accruing before the date of demand upon the surety for payment of the guardian's liability, which in this case was the date the suit was filed. By way of a reply brief, Fidelity also contends (3) Snell's suit was a collateral attack on the December 1, 1976 order and, therefore, in the absence of a lack of jurisdiction apparent on the face of the record, the order is binding on Snell as a discharge of Fidelity's suretyship obligations; and (4) as a surety, Fidelity cannot be held jointly and severally liable. The points raised in the reply brief present new points of error not timely filed and therefore not properly preserved. We will not consider the reply brief to the extent that it presents new points of error.

Fidelity argues it was discharged from liability under *the* bond by the December 1, 1976 order; that there was only *one* bond for both guardianships; and therefore, the order operated to discharge Fidelity's obligations with respect to *both* guardianships. Fidelity apparently assumes the court's order can determine issues not properly before it and its obligations under the bond are not severable. We disagree.

■ The rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence might have been tried in a former trial, as well as those which were actually tried. It will not, however, bar a second suit on a technically different cause of action. *Ogletree v. Crates*, 363 S.W.2d 431, 434 (Tex.1963). The rules rest upon a policy of protecting a party from being twice vexed for the same cause together with that of achieving judicial economy in precluding a party who has had a fair trial from relitigating the same issue. *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex. 1971). In applying for discharge with respect to Roy's estate, Gabriel acted only in her capacity as Roy's guardian. The issues presented by her application for discharge related only to final accounting, settlement and closing of Roy's guardianship. Randall was not competent to guard his own interests at that time. Gabriel continued to act as Randall's guardian for three years after Roy's estate was closed. When balancing

the competing interests of the ward and the surety, the scale tips heavily in favor of protection of the ward against defalcations of the guardian. *Massie v. DeShields*, 62 S.W.2d 322, 324 (Tex.Civ.App.—Dallas 1933, writ ref'd). The simple fact that the court appears to have overstated the effect of its judgment will not operate to bar Snell's suit on behalf of Randall. No issues concerning discharge of Fidelity on its obligations to Randall's estate were presented or adjudicated in 1976.

■ The purpose of demanding a bond is to protect the ward against mismanagement, waste, and fraud by the guardian. *See* Tex.Prob.Code Ann. §§ 191–93, 196, 207, 214–17, 233, 392 (Vernon 1980). Both the guardian and the surety are liable for losses suffered by the ward resulting from the making of unapproved loans by the guardian. Tex.Prob.Code Ann. § 392 (Vernon 1980). When the court requires that a new bond be given, the surety on the old bond is not discharged until the new bond is approved. *Miller v. Miller*, 21 Tex.Civ.App. 382, 53 S.W. 362 (1899); *Moore v. Hanscom*, 103 S.W. 665 (Tex.Civ.App.1907) *rev'd on other grounds*, 101 Tex. 293, 106 S.W. 876 (1908). When a guardian resigns, the surety may not be discharged until the guardian is discharged. Tex.Prob.Code Ann. § 221(f) (Vernon 1980).

■ The liability of a surety on a bond given to protect two minor wards is for the share of each minor ward in the funds on hand at the time of the giving of the bond, and the interest of the two wards in the bond is *equal. Freedman v. Vallie*, 75 S.W. 322 (Tex.Civ.App.1903, no writ). Where one bond was given to assure the faithful performance of a guardian of the estates of two minors (as here), the discharge of the guardian on the estate of one of the minors does not release the surety from liability for the guardian's misconduct in managing the estate of the other. *Roberson v. Tonn*, 76 Tex. 535, 13 S.W. 385 (1890).

■ Clearly, Gabriel was not discharged as guardian of Randall's estate by the December 1, 1976 order. It is not apparent from the *Roberson* decision whether an order discharging the surety on the bond was entered at the same time that the guardian was discharged as to one of the minors' estates. However, the Probate Code and the law make it clear that a surety should not be discharged before the estate is finally settled and accounted for and the guardian is discharged, or before new safeguards are established for the protection of the ward's estate. "While sureties may be classed as favorites of the law and their rights jealously protected; yet the rights of the minor ward, where defalcation on the part of her guardian has occurred, should be guarded with extreme zealousness." *Massie v. DeShields*, 62 S.W.2d 322, 324. Therefore, the *Roberson* rule is equally applicable where, as here, the order closing one minor ward's estate *appears* to discharge the surety from all liability under a bond given to protect two minors but refers to an application to close only one minor ward's estate and discharges the guardian and the surety only with respect to that one estate. The protection of Randall's estate, the rules and procedures regarding discharge, and the limitations of the application to close Roy's estate require us to hold that the surety's obligations on the bond are severable, the December 1, 1976 order discharged Fidelity from liability only under that portion of the bond applicable to Roy's guardianship, and res judicata does not bar Snell's claim against Fidelity.

■ We turn now to Fidelity's contention that a surety's liability for interest on an authorized loan does not begin to accrue until demand is made upon the surety. In support of this contention, Fidelity cites *Ward v. Maryland Casualty Co.*, 140 Tex. 124, 166 S.W.2d 117 (Tex.Comm'n.App. 1942); *State v. Standard Acc. Ins.*, 203 S.W.2d 984 (Tex.Civ.App.—Texarkana 1947, writ ref'd); and *Aetna Insurance Co. v. Junction Warehouse Co.*, 389 F.2d 464 (5th Cir. 1968). These cases dealt with defalcations by the principal or guardian with respect to which liability for interest did not accrue by the terms of the defalcation itself. Furthermore, the defalcations in-

volved were not governed by a statutory provision expressly charging the surety liability for the defalcation, as in the case of unauthorized loans by a guardian. *See* Tex. Prob. Code Ann. § 392 (Vernon 1980).

*Junction Warehouse* implied that the purpose of requiring a demand is to provide notice to the surety. Fidelity received notice of the loan, by Gabriel's telephone call to Higdon Compton, within one week after the loan was made. *Standard Acc. Ins.* suggested that a surety's liability for interest on defalcations arises when it becomes the surety's duty to pay. The surety's duty to pay in the instant case is governed by § 392 of the Probate Code and the terms of the loan itself.

*Maryland Casualty* held that a surety's liability arises when it breaches its obligation under the bond. Section 392 of the Probate Code places a special obligation on the surety for "whatever loss" is sustained by a ward resulting from his guardian's unauthorized loans. The loan, by its terms, provided that interest would accrue at a rate of 6% per annum from the date of the loan. The loss sustained by the ward was the amount of the uncollected principal plus the accrued interest. Therefore, with respect to an unauthorized loan providing for interest, of which the surety is timely notified, the surety's liability for the interest provided by the terms of the loan arises at the time the unauthorized loan is consummated. The trial court's interest award was proper.

Fidelity's points of error are overruled and the judgment below is affirmed.