Byrd, Culwell and Dean v. Estate of Nelms



 






IN THE


TENTH COURT OF APPEALS


 



No. 10-01-00241-CV



 JAMES H. BYRD,

 Appellants

 v.


 THE ESTATE OF H.G. NELMS,

 Appellee

 



From the 133rd District Court


Harris County, Texas


Trial Court # 93-61032


 
 

O P I N I O N


 


 James H. Byrd, along with others in a joint venture, signed an agreement guaranteeing a
debt incurred by the joint venture. Years after Byrd assigned away his interest in the joint
venture, he was sued by The Estate of H. G. Nelms, (1) one of the current venture partners and
also a co-guarantor, which, after purchasing the underlying debt, sought payment of the debt
from its fellow co-guarantors. A jury found that the Nelms Partnership paid the debt in its
capacity as a co-guarantor and not as a partner in the joint venture. The trial court held Byrd
jointly and severally liable for the debt. Byrd appeals from this judgment. We find that there
is sufficient evidence that the Nelms Partnership paid the debt in its capacity as a guarantor. 
We also hold that a co-guarantor can purchase a note and sue its fellow co-guarantors as an
assignee. However, despite "joint and several" language in the guaranty agreement at issue,
the Nelms Partnership is limited in its recovery to the proportionate share of the co-guarantors.THE ISSUES ON APPEAL

 Byrd contends in nine (2) issues that: (1) there is no evidence or factually insufficient
evidence to support the jury's finding that the Nelms Partnership paid the note in its capacity as
a guarantor; (2-5) the trial court erred by refusing to submit proposed jury questions and
instructions; (7) the trial court erred by finding that Byrd was jointly and severally liable; (8)
there is no evidence or factually insufficient evidence to support the judge's finding that the
Nelms Partnership had standing to sue or that it sustained any damages in the capacity in which
it brought suit; and (9) there is no evidence or factually insufficient evidence to support the
judge's finding that the note matured by its own terms on March 1, 1995, and that the Nelms
Partnership established notice of default to the co-guarantors. The Nelms Partnership contends
in a single cross-point that the trial court erred in finding that it waived the right to recover
prejudgment interest. We affirm in part, reverse and remand in part.

BACKGROUND

 In 1981, Byrd, the Nelms Partnership, and others formed a joint venture for the purpose
of owning, maintaining, and leasing a building in Houston. The interest of each partner was as
follows: James H. Byrd, 12.5%; John O'Leary, 25%; W. D. Culwell, 25%; William R. Dean,
25%; the Nelms Partnership, 6.25%; and Elouise A. Nazro, 6.25%. In order to pay the
$3,000,000 purchase price, the venture executed a promissory note (first note) payable to
Holland Mortgage and Investment Company in the amount of $2,250,000. The partners
contributed to the $750,000 down payment in proportion to each one's interest in the venture. 
The note was secured by a deed of trust and by unconditional guaranty agreements executed by
all the partners. Over time the note went though a series of re-financing arrangements
ultimately resulting in Texas Commerce Bank obtaining ownership.

 In 1986, Dean and O'Leary assigned all their interest in the venture to Byrd, Culwell,
Nazro, and the Nelms Partnership. They did not revoke their guaranty agreements. After the
assignment, Dean and O'Leary had no further dealings with those remaining in the venture. 
Shortly thereafter, Byrd assigned his interest in the venture to the Nelms Partnership, Nazro,
and Culwell without revoking his guaranty agreement. He did indicate that he thought that the
Nelms Partnership, through Frank Nelms, orally agreed to assume his obligations under the
note if he paid the taxes for that year. Thereafter, Byrd had no further dealings with those
remaining in the venture. Soon after, Culwell also conveyed his interest in the venture equally
to the Nelms Partnership and Nazro, but did not revoke his guaranty. As a result of that
conveyance, the Nelms Partnership and Nazro each became 50% owners in the venture.

 In November 1989, the property was sold to Buffalo Speedway Investments, Inc., a
corporation formed by the venture. On March 10, 1992, Buffalo Speedway Investments sold
the property and the building to Lamar Council of Co-owners for $1,100,000. The day before
the sale, Texas Commerce Bank released its lien on the property. The net proceeds of that sale
were applied to the note at Texas Commerce Bank, leaving a balance of $1,052,758 on the
note. On July 21, 1992, the Nelms Partnership and Nazro entered into a reimbursement
agreement in which they agreed that they were each obligated to the other as partners in the
joint venture for one half of the amount owed on the note. On that same day, Nazro paid for
his half due on the first note, and the Nelms Partnership executed an installment loan note
(second note) payable to Texas Commerce Bank in the amount of $526,379.09 towards his half
of the indebtedness on the first note. Subsequently, Texas Commerce Bank assigned its
interest in the first note and guaranty agreements to the Nelms Partnership and Nazro. The
assignment made no mention of the joint venture. The Nelms Partnership paid the balance due
on the second note in October 1992.

 On November 11, 1993, the Nelms Partnership and Nazro filed suit against the co-guarantors, including Byrd, seeking compensation for breach of the guaranty agreements as
assignees of the note and in the alternative contribution as co-guarantors. The plaintiffs did not
pursue their claim against O'Leary, because he declared bankruptcy. Nazro was subsequently
dismissed from the case for lack of jurisdiction. Judgment was entered against Byrd, Dean,
and the Estate of W.D. Culwell in the amount of $459,428.79 plus attorney's fees. After
reaching a settlement agreement, the Nelms Partnership partially dismissed its appeal as to
Dean and the Estate of W.D. Culwell. Byrd and the Nelms Partnership are the only parties in
interest in this appeal.

SUFFICIENCY OF EVIDENCE--CAPACITY TO SUE

 In Byrd's eighth issue, he urges that there is no evidence, or insufficient evidence, to
support the trial court's finding that the Nelms Partnership had standing to sue or sustained any
damages in the capacity in which it brought suit. Before trial, Byrd filed a verified plea in
abatement, in accordance with Rule 93(1) of the Texas Rules of Civil Procedure, contending
that there was insufficient information to determine the capacity in which the Nelms
Partnership brought this suit. The plea indicated that the Nelms Partnership could not maintain
such a suit if it had failed to file an assumed name certificate in the county in which it is
conducting business under that assumed name. It also stated that the Nelms Partnership did not
specify the type of entity by which it operated. Byrd contends that it cannot tell whether "the
Estate of H.G. Nelms" acting as the estate of the deceased H.G. Nelms is suing based on the
note, or whether "the Estate of H.G. Nelms" acting as the Nelms Partnership is suing on the
note.

 As a result, the Nelms Partnership filed a verified response, showing that before trial in
1992 it had filed an assumed name certificate in Harris County indicating that it was a general
partnership. The trial court subsequently denied Byrd's plea in abatement.

 Whether a party has capacity to sue is a question of law. Anderson v. New Property
Owners' Ass'n of Newport, Inc., 122 S.W.3d 378, 384 (Tex. App.--Texarkana 2003, pet.
denied) (citing Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928-29 (Tex. 1998)). A trial
court's conclusions on questions of law cannot be attacked on factual insufficiency grounds. 
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Hardy v. State,
50 S.W.3d 689, 696 (Tex. App.--Waco 2001), aff'd, 102 S.W.3d 123 (Tex. 2003). Rather,
they are reviewed de novo and are analyzed for their correctness. BMC Software, 83 S.W.3d
at 794; Hardy, 50 S.W.3d at 696. Even if the conclusions of law are not correct, the error
will not require reversal if the trial court rendered the proper judgment. BMC Software, 83
S.W.3d at 794; Hardy, 50 S.W.3d at 696.

 The Texas Business and Commerce Code requires every business operating under an
assumed name to file an assumed name certificate in the county where the entity is doing
business. Tex. Bus. & Com. Code Ann. § 36.10(a) (Vernon 2002). If an assumed name
certificate is not filed, the entity loses the privilege of bringing suit in any court under the state
of Texas under that name. Tex. Bus. & Com. Code Ann. § 36.25 (Vernon 2002).

 In response to Byrd's plea in abatement, the Nelms Partnership presented evidence that it
had indeed filed an assumed name certificate in Harris County. The certificate states that the
entity doing business in Harris County is a general partnership called "The Estate of H.G.
Nelms," the very name of the entity listed as the plaintiff in this case. See Tex. R. Civ. P. 28. 
The certificate was filed June 12, 1992, over one month before the Nelms Partnership signed a
promissory note with Texas Commerce Bank with which to pay off the original note. 
Furthermore, the Nelms Partnership also produced a 1996 partnership agreement between four
testamentary trusts. The partnership was called "The Estate of H.G. Nelms."

 We find that the trial court's conclusion that the Nelms Partnership had the legal capacity
to sue Byrd was correct. BMC Software, 83 S.W.3d at 794.

 Throughout his various issues, Byrd consistently argues that the Nelms Partnership lacks
the ability to recover in the capacity in which it sued. This argument is restated in various
ways, such as: the Nelms Partnership lacks the ability to recover in the capacity in which it
sued because it was not a partnership at the time the note was purchased; the Nelms
Partnership cannot prove it is the holder of the note because it did not acquire the note in the
capacity that it is now suing under, i.e., it was not a partnership at the time the note was
purchased. Byrd brought some evidence to prove his theory of capacity during the trial,
apparently seeking to put the issue before the jury; however none of his evidence was
presented to the trial court in his plea in abatement, the proper pleading for questions of
capacity to sue. El T. Mexican Restaurants, Inc. v. Bacon, 921 S.W.2d 247, 250 (Tex.
App.--Houston [1st Dist.] 1995, writ denied); Rimco Enterprises, Inc. v. Texas Elec. Serv.
Co., 599 S.W.2d 362, 365 (Tex. Civ. App.--Fort Worth 1980, writ ref'd n.r.e.). In his plea
in abatement and in his argument at the hearing, Byrd argued only that they could not discern
what entity was bringing an action against him, and that the pleadings should be amended. 
Byrd did not argue to the trial court that the partnership was not in existence when the note
was purchased and seeks to do so only on appeal. Therefore we will not consider it in
reviewing the issue on capacity to bring suit. Loera v. Interstate Inv. Corp., 93 S.W.3d 224,
228 (Tex. App.--Houston [14th Dist.] 2002, pet. denied).

 However, in passing, we note the following facts. In 1981, at the inception of the joint
venture, the joint venture agreements and original guaranty agreements were all signed "The
Estate of H.G. Nelms by" with the trustees of the trusts signing underneath. This method of
signing continued until 1987. At that time, the note was assigned to Texas Commerce Bank. 
The assignment documents and renewed guaranties were signed "The Estate of H.G. Nelms, a
Texas General Partnership, a Joint Venturer" and underneath this notation, each trust was
named and designated as a general partner beneath which were the signatures of the trustees
for each trust. The Nelms Partnership continued this method of signing for almost every
transaction thereafter. The signed partnership agreement is dated 1996, but there need not be a
written partnership agreement for a partnership to be legally recognized. Tex. Rev. Civ.
Stat. Ann. art. 6132b, § 1.01(12) (Vernon 2002). The assumed name certificate stating that
"The Estate of H.G. Nelms" was a general partnership consisting of four trusts was on file in
Harris county more than a month before the July 21, 1992, transaction between the Nelms
Partnership and Texas Commerce Bank.

 We overrule Byrd's eighth issue. 

 SUFFICIENCY OF EVIDENCE--PAYMENT AS GUARANTOR


 The jury found that the Nelms Partnership paid the note in its capacity as a guarantor. 
Byrd contends in his first issue that there is no evidence or factually insufficient evidence to
support the jury's finding. We find that there is sufficient evidence that the Nelms Partnership
paid the note as a guarantor.

Standard of Review

 Byrd, as the defendant, did not have the burden of proof at trial. See Escalante v. Luckie,
77 S.W.3d 410, 416 (Tex. App.--Eastland 2002, pet. denied). To prevail on a no-evidence
complaint, an appellant who did not have the burden of proof at trial must show that there is no
evidence to support the contested finding. Beard v. Beard, 49 S.W.3d 40, 55 (Tex.
App.--Waco 2001, pet. denied). The appellate court must consider only the evidence and
inferences that support the adverse finding and ignore all evidence and inferences to the
contrary. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002). A "no evidence" claim will be
sustained if: (a) there is a complete absence of evidence of a vital fact; (b) the rules of law or
evidence prevent the court from giving weight to the only evidence offered to prove a vital
fact, (c) the evidence offered to prove a vital fact is not more than a scintilla, or (d) the
evidence conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). When the
evidence "rises to a level that would enable reasonable and fair-minded people to differ in their
conclusion," then there is more than a scintilla of evidence. Beard, 49 S.W.3d at 55 (quoting
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)).

 When an appellant who did not have the burden of proof at trial complains of factually
insufficient evidence, the appellate court must examine the entire record. The court will
reverse only if the trial court's finding is "so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986);
Beard, 49 S.W.3d at 55. If the proponent's proof, while adequate, if taken alone, is so
overwhelmed by the opponent's contrary proof, or if the finding is based on weak evidence,
reversal can occur. Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.--Waco,
pet. denied) (citing William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and
"Insufficient Evidence," 69 Tex. L. Rev. 515, 519 n.11 (1991)).

 In resolving this issue, we must first look to what the Nelms Partnership was required to
prove at trial. Byrd argues that the Nelms Partnership must prove (1) Byrd executed the
guaranty; (2) the underlying note is in default; (3) the Nelms Partnership in its capacity as a
guarantor is the present holder of the note and the guaranty agreements; and (4) there is a
balance due and owing on the note. Sunbelt Savings, FSB, Dallas, Texas v. Birch, 796 F.
Supp 991, 995 (S.D. Tex. 1992). However, Byrd relies on federal precedent that is not
binding upon this court. In order that we might be consistent with our sister courts, we find
that in order to recover on a breach of guaranty agreement, the plaintiff must prove: (1) the
existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by
the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the
failure or refusal to perform the promise by the guarantor. Escalante, 77 S.W.3d at 416;
Marshall v. Ford Motor Company, 878 S.W.2d 629, 631 (Tex. App.--Dallas 1994, no writ). 
Byrd does not argue about the terms of the underlying contract or his refusal to perform his
promise. His arguments regarding whether there is a balance due under the note and whether
the note is in default will be discussed in our review of his ninth issue. He argues only that the
evidence establishes that the Nelms Partnership paid the debt as a partner in the joint venture,
and not as a guarantor. Therefore we will conduct our sufficiency review under (1).

Capacity in which the Nelms Partnership Obtained the Guaranty Agreement A guaranty creates a secondary obligation whereby the guarantor promises to answer for
the debt of another, and a creditor may call upon the guarantor to perform once the primary
obligor has failed to perform. Garner v. Corpus Christi Nat. Bank, 944 S.W.2d 469, 475
(Tex. App.--Corpus Christi 1997, writ denied) (citing Republic Nat'l Bank v. Northwest Nat'l
Bank, 578 S.W.2d 109, 114 (Tex. 1978)). In this instance, the primary obligor was the joint
venture. The co-guarantors can be called to answer for the debt only if the joint venture
cannot fulfill its duties and pay the debt. Id.

 The question asked of the jury is the method in which the Nelms Partnership acquired the
note: by payment or by purchase. The Nelms Partnership is both a partner in the joint venture
and a co-guarantor to the debt executed by the joint venture. This makes the Nelms
Partnership liable on the note in two ways: (1) as a partner in the joint venture it is the
principle debtor on the note; and (2) as a co-guarantor, it is secondarily liable on the note. 
Byrd argues that the Nelms Partnership did not purchase the note as a guarantor, but paid the
note as a partner in the joint venture, thereby extinguishing Byrd's liability for the debt. The
Nelms Partnership asserts that the money given to Texas Commerce Bank was not to pay off
the debt, but to buy the debt and underlying agreements as a co-guarantor. An overview of the
testimony and evidence at trial demonstrates conflicting evidence on this issue.

 Jack Lyons, the trustee of each of the four trusts comprising the Nelms Partnership,
testified that the Nelms Partnership bought the debt in the capacity of a guarantor. While
acknowledging the existence of a reimbursement agreement between the Nelms Partnership and
Nazro as partners in the joint venture, he insisted that they paid it because they were obligated
as guarantors to pay it. He indicated that because there was a balance on the debt after the sale
of the property, "we had to make up the deficit." He further testified that the October 1992
payment on the second note was made by check on the Nelms Partnership's account. He said
that Nazro also paid its proportionate share, and that no payment was made from a joint
venture account. He related that there would not have been funds in a joint venture account
from which to make such a payment. He admitted testifying previously that the Nelms
Partnership and Nazro paid the indebtedness as partners in the joint venture.

 In contrast to Lyons trial testimony, the 1992 federal income tax return of Buffalo
Speedway Investments (the company formed by the joint venture) reflected that the Nelms
Partnership and Nazro each made a capital contribution of $579,381 and $579,377,
respectively. The return shows that the bulk of their respective capital contributions
represented an assumption of debt from Buffalo Speedway Investments.

 James Kelly, an attorney board certified in the areas of commercial and residential real
estate, testified concerning the tax return, which he had seen for the first time a few minutes
prior to his testimony. He acknowledged that the tax return reflected a loss for the joint
venture of $947,143, largely occasioned by a long-term capital loss of $945,226. Yet, he
explained that the loss was an assumption of debt in connection with the purchase of the notes
that the Nelms Partnership had done in its individual capacity. He also stated that the capital
contributions were necessary to zero out the capital accounts in the joint venture, and that the
transaction was outside the venture. Kelly further testified that although the Nelms Partnership
and Nazro, as the only partners in the joint venture, were primarily liable for all debts of the
venture, nothing in the tax return indicated that the Nelms Partnership and Nazro acquired the
note in any capacity other than their individual capacities.

 Kelly also testified in the area of financial obligations relating to real estate. He
concluded, based upon his examination of the documents in this case, that the Nelms
Partnership and Nazro purchased the note in their individual capacities because the money
came from them individually, not from the venture, and that the bank's assignment was made
to them individually, not to the venture.

 After reviewing the evidence, we find that the evidence is such that reasonable minds
could come to different conclusions. That being so, it is not within our power to invade the
province of the jury. Beard, 49 S.W.3d at 55. The evidence contrary to the verdict is not so
against the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain, 709
S.W.2d at 176. Therefore, we hold that there is sufficient evidence to support the jury's
finding that the Nelms Partnership paid the debt in its capacity as a guarantor.
SUFFICIENCY OF EVIDENCE--NOTE MATURITY AND NOTICE OF DEFAULT


 Byrd contends in his ninth issue that there is insufficient evidence that the note matured or
that he received notice of default. In its judgment, the trial court stated, "It is further found by
the Court, as a matter of law, that the Texas Commerce Bank note matured by its own terms
on March 1, 1995, and Plaintiff has established notice of default provided to the Co-Guarantors by the filing of suit and by evidence produced at trial . . . ." Byrd contends that
there is no evidence to support the trial court's finding.

 The trial court's finding that the note matured on its own terms was based on the trial
court's interpretation of the note. The "Third Renewal and Extension of Note and Liens"
provided that the note was to be fully and finally paid in its entirety by March 1, 1995. 
Apparently, Byrd's argument is twofold. He first asserts that because the Nelms Partnership
paid the note as a partner in the joint venture in 1992, the note does not mature at all. And
secondly, because Byrd was sued eighteen months before the maturity date, the note could not
have matured on its own terms.

 The question raised in the first argument was answered by the jury. The jury found that
the Nelms Partnership purchased the loan in its capacity as a co-guarantor. In doing so, the
Nelms Partnership becomes an assignee of the note, allowing the Nelms Partnership to stand in
the shoes of the creditor and seek payment from the principle debtor (the venture) or the
guarantors. Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 681 (1931).

 Regarding Byrd's second argument, normally, an assignee must wait until the note
matures or there is a default on the note before pursuing its claims against the principle debtor
or the guarantors. However, as long as the note is mature and due at the time of trial, there is
no error. See Arnold v. Willis, 68 Tex. 417, 4 S.W. 485 (Tex. 1887). The trial was held in
2001, well after the note became due on its own terms. Furthermore, there was testimony at
trial that after the building was sold in 1992, the note became due at that moment, and the joint
venture had no funds with which to pay off the amount owed on the note. We find there was
sufficient evidence for the court to conclude that the note matured before trial.

 Byrd further argues that the trial court erred in finding that he received notice that the
venture defaulted on the note, thereby triggering his liability. However, by the very terms of
his guaranty agreement, Byrd is not entitled to notice of default. His guaranty agreement states
that "[g]uarantors hereby expressly waive. . . . (c) notice of demand for payment, notice of
default or nonpayment, presentment, protest and notice of protest, as to the note. . . ." "A
guarantor is not entitled to have demand made for payment nor notice of default unless
expressly provided for." Roseborough v. Phillips, 389 S.W.2d 593, 595 (Tex. Civ.
App.--Dallas 1965, no writ); see also Vaughn v. DAP Financial Services, Inc., 982 S.W.2d 1,
6-7 (Tex. App.--Houston [1st Dist.] 1997, no writ). The guaranty agreement expressly
provides the opposite. We overrule Byrd's ninth issue.

JUDICIAL ESTOPPEL

 Byrd further asserts, in conjunction with his first issue, that the Nelms Partnership is
judicially estopped from contending that it paid off the indebtedness in the capacity of a
guarantor because such a position is inconsistent with the 1992 tax return of Buffalo Speedway
Investments. He argues that the Nelms Partnership should not be allowed to pay the debt as a
partner in the venture, taking the benefit of a valuable tax loss, and then claim that it paid as a
guarantor and gain the benefit of contribution from the co-guarantors.

 Judicial estoppel prevents a party from asserting a position in a legal proceeding which is
inconsistent with a position previously taken by the party. In re Coastal Plains, Inc., 179 F.3d
197, 205 & n.1 (5th Cir. 1999). We have recently held that in cases of judicial estoppel, we
apply the law applicable to the prior proceeding. Dallas Sales Co., Inc. v. Carlisle Silver Co.,
Inc., 134 S.W.3d 928, 931 (Tex. App.--Waco 2004, pet. denied). Because the tax return was
made under oath to a federal agency, we will apply federal law.

 Byrd cites Ashman v. Commissioner of Internal Revenue in support of his position. 231
F.3d 541, 543 (9th Cir. 2000). However, Ashman's holding is based on the "quasi-estoppel"
theory used by the Tax Court in actions against taxpayers and is not precedent for the argument
that a tax return can be used to judicially estop a party from arguing an inconsistent position in
a judicial proceeding that is not before the Tax Court. See id. On the contrary, while the
majority of the federal courts have not addressed this issue, two circuits have decided that
judicial estoppel would not apply to sworn statements in a tax return. Atlantic Limousine, Inc.
v. N.L.R.B., 243 F.3d 711, 715 n.2 (3rd Cir. 2001); Smith v. Travelers Ins. Co., 438 F.2d
373, 377 (6th Cir. 1971). Therefore, we find that judicial estoppel is inapplicable in this case. 
We overrule Byrd's first issue.

JURY QUESTION - WHETHER A PARTNERSHIP EXISTED

 Byrd contends in his second issue that the trial court erred by failing to submit a question
as to whether, on the date that the Nelms Partnership paid the bank for the assignment of the
note, a partnership existed between the four trusts that comprised the Nelms Partnership. 

 We review a trial court's decision to submit or refuse a particular instruction under an
abuse-of-discretion standard. See Tex. Dep't of Human Services v. E.B., 802 S.W.2d 647, 649
(Tex. 1990). Pursuant to the Texas Rules of Civil Procedure, a trial court is required to
submit questions and instructions that are raised by the pleadings and evidence. Tex. R. Civ.
P. § 278. The trial court has broad discretion in submitting jury questions and instructions. 
See Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 791 (Tex. 1995). When a trial judge
refuses to submit a proper question or instruction, a reversal is not required unless the error
probably caused the rendition of an improper judgment. See Tex. R. App. P. § 44.1; Union P.
R. Co. v. Williams, 85 S.W.3d 162, 170 (Tex. 2002).

 The question of whether a partnership existed at the time the note was paid is relevant to
the ownership of the note. If the Nelms Partnership did not exist at the time the note was paid,
then the Nelms Partnership may not have ownership of the note upon which to sue. Ownership
of a note is an issue of capacity and requires a verified denial in order to preserve error. 
Pledger v. Schoellkopf, 762 S.W.2d 145, 145-46 (Tex. 1988) (per curiam); Nootsie, Ltd. v.
Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996). Any question
concerning the Nelms Partnership's capacity to sue was determined by the trial court as a
matter of law in ruling on Byrd's plea in abatement. We have already held in Byrd's eighth
issue that the trial court was correct in holding that the Estate had the requisite capacity to sue. 

 Issues of capacity to sue are questions of law. Mayhew, 964 S.W.2d at 928-29. Issues
found as a matter of law should not be submitted to the jury. Star Enterprise v. Marze, 61
S.W.3d 449, 459 (Tex. App.--San Antonio 2001, pet. denied) (citing T.O. Stanley Boot Co.
v. Bank of El Paso, 847 S.W.3d 218, 222-23 (Tex. 1992)). Therefore, the trial court did not
abuse its discretion in refusing to submit Byrd's question. We overrule Byrd's second issue.

JURY QUESTION - BREACH OF GUARANTY AGREEMENT

 Byrd insists in his third issue that the trial court erred by failing to submit his requested
jury questions and instructions on whether he breached his guaranty agreement. Whether a
party has breached a contract is a question of law for the court, not a question of fact for the
jury. See Willis v. Donnelly, 118 S.W.3d 10, 25-26 (Tex. App.--Houston [14th Dist.] 2003,
no pet.); Chappell Hill Bank v. Lane Bank Equip. Co., 38 S.W.3d 237, 245 (Tex.
App.--Texarkana 2001, pet. denied); Lafarge Corp. v. Wolff, 977 S.W.2d 181, 186 (Tex.
App.--Austin 1998, pet. denied). "The judge determines what conduct is required of the
parties and, insofar as a dispute exists concerning the failure of a party to perform the contract,
the judge submits the disputed fact questions to the jury." Lafarge, 977 S.W.2d at 186.

 Byrd acknowledged at trial that he was a guarantor, and the guaranty agreements were
admitted into evidence without objection. Byrd argues that because there was conflicting
evidence of the elements necessary to prove breach of contract, the trial court should have
submitted his breach of contract question. Regarding the conflicting evidence, Byrd argues
that he offered evidence that the note was not in default, that the Nelms Partnership was not the
holder of the note, and that there was no balance due on the note. 

 Whether the Nelms Partnership is the holder of the note is an issue of capacity, was found
by the trial court as a matter of law, and was addressed in our disposition of Byrd's eighth
issue. Whether the note was in default was found by the court as a matter of law and was
addressed in our disposition of Byrd's ninth issue. Issues found as a matter of law should not
be submitted to the jury. See Star Enterprise, 61 S.W.3d at 459.

 Additionally, whether the note was in default or whether there was a balance due are
questions resolved by the jury. The only reason Byrd gives as to why there is no balance, or
the note is not in default is because the Nelms Partnership paid the note as a partner in the joint
venture. Therefore, any fact question as to Byrd's breach of the guaranty agreement is
resolved by the jury's answer to the charge. Lafarge, 977 S.W.2d at 186. The trial court did
not abuse its discretion in refusing to submit Byrd's question on whether he breached the
guaranty agreement. We overrule Byrd's third issue.

JURY QUESTION--AMOUNT OWED

 Byrd contends in his fourth issue that the trial court erred by failing to submit an issue
concerning the amount of damages owed by him. As we will discuss under our review of
Byrd's seventh issue, under general surety law, Byrd is responsible for his contributory share
of the unpaid debt as a matter of law. Mandolfo v. Chudy, 253 Neb. 927, 573 N.W.2d 135
(1998). Therefore, there was no factual issue to submit to the jury with respect to it. The trial
court did not abuse its discretion in refusing to submit Byrd's question on damages. We
overrule Byrd's fourth issue.

JURY QUESTION--WAIVER

 Byrd argues in his fifth issue that the trial court erred by failing to submit his requested
jury question and instruction regarding whether the breach of the guaranty agreement was
excused by waiver. 

 Waiver is "an intentional relinquishment of a known right or intentional conduct
inconsistent with claiming that right." United States Fid. & Guar. Co. v. Bimco Iron & Metal
Corp., 464 S.W.2d 353, 357 (Tex. 1971); Hatch v. Williams, 110 S.W.3d 516, 523 (Tex.
App.--Waco 2003, no pet.). Waiver is an affirmative defense that can be established by a
party's express renunciation of a known right, or by silence or inaction for so long a period as
to show an intention to yield the known right. Tenneco Inc. v. Enter. Prods. Co., 925
S.W.2d 640, 643 (Tex. 1996). Intent is the key element needed to establish waiver. Hatch,
110 S.W.3d at 523.

 Byrd's first argument is that waiver was shown by the fact that the joint venture's claim of
a long-term capital loss on its 1992 tax return is inconsistent with claiming a right based on
payment of the note by the Nelms Partnership as a guarantor. Even if this were error, it did
not probably cause the rendition of an improper judgment. The jury considered the tax return
when resolving the issue of whether the Nelms Partnership paid the note as a co-guarantor. 
The jury found that the Nelms Partnership paid the note as a guarantor, and we have held that
the evidence is sufficient to support that finding, despite the tax return. Consequently, any
error in the trial court's failure to submit the waiver issue is harmless. See Tex. R. App. P. §
44.1; Union P. R. Co., 85 S.W.3d at 170.

 Byrd also argues that the agreement between Frank Nelms and Byrd is additional evidence
of waiver. He points to testimony that Frank Nelms had a 1986 oral agreement with Byrd that
Nelms would take over Byrd's obligation on the venture in exchange for his assignment of his
interest to the venture and payment of $12,000 in property taxes. We first note that Byrd has
not referred us to any evidence that Byrd ever accepted Nelms's offer or paid the $12,000 in
property taxes that was a condition of the waiver. We also note that under the Statute of
Frauds an agreement to assume the debt of another must be in writing. Tex. Bus. & Com.
Code § 26.01(a) and (b)(2) (Vernon 2002). Consequently, inasmuch as any agreement by
Nelms to assume Byrd's obligations to the holder of the note was not in writing, it could not
form the basis for a valid agreement to that effect. We overrule Byrd's fifth issue.

JOINT AND SEVERAL LIABILITY

 Byrd argues in his seventh issue that the trial court erred in making a finding that the co-guarantors are jointly and severally liable. The guaranty agreements provide that the
guarantors' liability is joint and several. In its sixth amended petition, the Nelms Partnership
sought to recover for breach of the guaranty agreements in its capacity as the holder of the note
and guaranty agreements and, alternatively, for contribution in its capacity as a co-guarantor. 
In the portion of the petition relating to its suit for contribution, the Nelms Partnership alleged
that it was entitled to contribution from "[d]efendants, their co-guarantors, of the [sic] their pro
rata share of the indebtedness paid by plaintiffs under the agreements." With respect to its
claim for breach of the guaranty agreement, the Nelms Partnership alleged that "[d]efendants
are each severally liable to plaintiffs for such amounts pursuant to their guaranty agreements."

 Byrd argues that despite the provision in his guaranty agreement that he is jointly and
severally liable, the Nelms Partnership is barred from asserting so because it judicially
admitted that it was seeking only each defendant's proportionate share. The assertion in the
pleading relied upon by Byrd is not a judicial admission, but an alternative pleading. See
Brooks v. Center for Healthcare Servs., 981 S.W.2d 279, 283 (Tex. App.--San Antonio 1998,
no pet.) (citing Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 767 (Tex. 1983)).

 Though the pleadings of the Nelms Partnership are not judicial admissions, Byrd is correct
in arguing that he is liable to the Nelms Partnership for only his proportionate share. Because
a guaranty is a type of surety, we will look to the laws of suretyship for clarification. See
Tex. Bus. & Com. Code Ann. § 34.01 (Vernon 2002).

 Issues of suretyship and guaranty were decided long ago in Texas legal history. See
generally Roberson v. Tonn, 76 Tex. 535, 13 S.W. 385 (1890) (recognizing that a surety must
contribute to fellow co-surety's payment of the underlying debt); Hollis v. Winfree, 216
S.W.2d 625, 628-29 (Tex. Civ. App. Beaumont 1948, writ ref'd) (holding surety has no right
to compel fellow co-sureties to contribute more than their proportionate share). However, the
issue of whether a guarantor, by purchasing the underlying debt, can recover the full amount
due on the note from a co-guarantor based upon "joint and several" language in the guaranty
agreement is a more recent conundrum.

 In an unpublished opinion, the Fifth Court of Appeals acknowledged the issue of a
guarantor recovering more than its proportionate share, but declined to address it. Dealing
with a related question, the court found that a co-guarantor can purchase the underlying debt
and then sue on the debt as an assignee.

Tomaszewicz's main argument is that a guarantor should not be allowed to
improve his position in relation to other co-guarantors by obtaining an
assignment of the note and guaranty agreement. In other words, a guarantor
should not be able to sue based on the loan documents for the entire amount of
the debt or deficiency, thereby eliminating his liabilities as a guarantor and
increasing the liabilities of the co-guarantors. . . . We agree with Tomaszewicz
that a guarantor does not necessarily escape responsibility for his share of the
obligation under a promissory note by purchasing the note and guaranty
agreement from the creditor. . . . But this is not the issue before us. The issue
is whether Wiman can assert a cause of action against Tomaszewicz in his
capacity as holder of the note and transferee of the guaranty agreement. We
conclude he can. 


Wiman v. Tomaszewicz, 1997 WL 459084, **4-7, (Tex. App.--Dallas Aug. 13, 1997, pet.
denied) (not designated for publication).

 The Fifth Court cited Fox v. Kroeger in support of its finding that a guarantor can
purchase the underlying note.

From what we have said it follows that we now announce the rule in Texas to be
that, where the surety pays the debt of the principal, he has his election to either
pursue his legal remedies and bring an action on an assumpsit, or the obligation
implied by law in his favor for reimbursement by the principal; or he can
prosecute an action on the very debt itself, and in either event he stands in the
shoes of the original creditor as to any securities and rights of priority.


Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 681 (Tex. 1931).

We agree with the Dallas court, and find that the Nelms Partnership can purchase the
underlying note and guaranty agreements and assert a cause of action against the co-guarantors
as an assignee. However, finding no precedent in Texas on the issue at hand, we look to other
jurisdictions for guidance.

 While other jurisdictions disagree on whether a guarantor can purchase the underlying
note and sue his co-guarantors as an assignee, they agree that the guarantor is limited in his
recovery to only the contributive share of the other co-guarantors. (3) They reason that
contribution is an equitable remedy that implies a contract between guarantors ensuring that in
the event one of the guarantors is called to pay the debt, the other guarantors would contribute
their proportionate share, and no more. See Curtis v. Cichon, 462 So.2d 104, 105-06 (Fla. 2d
DCA 1985). The assignment of an underlying note and guaranty agreement to a guarantor
does not change the status of the guarantor in relation to his co-guarantors. Mandolfo, 253
Neb. at 931, 573 N.W.2d at 138. Therefore, as a matter of law, the relationship between
guarantors restricts recovery to their contributive share. Weitz v. Marram, 34 Md. App. 115,
121-22, 366 A.2d 86, 89-90 (1976).

 The holdings of these jurisdictions are based primarily on section 149 of the Restatement
of Security. The applicable provisions of the first edition of the Restatement and the current
edition are reproduced below.

A cosurety who has paid more than his proportionate share is also subrogated to
the creditor's rights against the cosureties, provided the principal's duty has
been satisfied, see § 141. The cosurety's right of recovery is, however, limited
to the amount to which he is entitled as contribution. 


Restatement of Security § 149 cmt. e (1941). 


(1) Subject to subsection (2) and to any express or implied agreement between
or among the cosureties, a cosurety's contributive share is the aggregate liability
of the cosureties to the obligee divided by the number of cosureties.


Restatement (Third) of Suretyship and Guaranty § 57 (1996).


General Principle - With respect to the obligee, each cosurety is liable to the full
extent of its secondary obligation. When an obligee obtains recovery from one
of the cosureties, however, the cost of that performance should not ultimately
rest completely on that cosurety. Rather, the cosureties are treated as though
they agreed among themselves to share the cost of their performance. Thus §
55(2) gives the performing cosurety recourse against the nonperforming
cosureties in order to bring about a sharing of that cost. The share of that cost to
be borne by each cosurety is that cosurety's contributive share. Under
subsection (1), the contributive share of each cosurety is presumed to be the
total liability of the cosureties to the obligee divided by the number of
cosureties. 


Restatement (Third) of Suretyship and Guaranty § 57 cmt a (1996); See also Restatement
(Third) of Suretyship and Guaranty § 55.

 The policy concerns for holding that a guarantor's recovery against his co-guarantors is
limited only to their proportionate share are best expressed thus:

Common sense dictates this result. All . . . sureties agree to be liable for full
payment of the note if the principal debtor defaults and are further liable for
contribution to the co-surety who actually pays the creditor. Thus, each surety's
ultimate liability may be fixed at his virile share of the note. If one of several
sureties, as here, could purchase the note (or otherwise contractually subrogate
to the creditor's rights) and then collect the full amount of the note from a co-surety, the purchasing surety would thereby escape liability for his virile portion
of the debt. If [Appellants] were able to succeed on their theory, then upon the
debtor's default, every surety would race to the bank to purchase the note. The
Civil Code does not contemplate that a surety's liability should be premised
upon the fortuity of being the first to purchase the debtor's note. 


Boyter v. Shreveport Bank and Trust, 65 B.R. 944, 948 (W.D. LA 1986). 

 We agree with the reasoning of these jurisdictions, and hold that the Nelms Partnership's
right to sue on the note and guaranty agreements as a purchaser/assignee is limited as a matter
of law to the contributive share of its co-guarantors.

 The trial court calculated the amount of damages against Byrd as $459,428.79, which
represents the $525,061.47 payment made by the Nelms Partnership less the Nelms
Partnership's proportionate share of 6.25 percent ($65,632.68). (4) However 6.25 percent is not
the Nelms Partnership's proportionate share as a guarantor, but its original percentage of
ownership in the joint venture. The Nelms Partnership did not bring this action against Byrd
in its capacity as a partner in the joint venture or under any joint venture agreement, but as a
co-guarantor and under the guaranty agreements. The jury found that the Nelms Partnership
purchased the debt in its capacity as a guarantor. Absent an express agreement among the
guarantors to the contrary, the contributive share of the Nelms Partnership is limited to the
total amount of liability divided by the number of co-guarantors. Restatement (Third) of
Suretyship and Guaranty § 57 (1996).

 The Nelms Partnership paid $525,061.47 for the note. There are six guarantors;
therefore, Byrd's contributive share would be one-sixth of the note. We reverse the damages
portion of the judgment and remand this cause to the trial court to re-calculate the damages as
to Byrd's contributive share of $87,510.25. We sustain Byrd's seventh issue.

PREJUDGMENT INTEREST

 The Nelms Partnership filed a notice of appeal and asserted in a single cross-point that the
trial court erred by failing to award it prejudgment interest. We first consider Byrd's
contention that we should not consider the cross-point because the Nelms Partnership did not
present it in a timely filed appellant's brief, but included the cross-point in his appellee's brief. 
Byrd contends that the Nelms Partnership was required to do so because it seeks, by means of
the cross-point, to alter the trial court's judgment.

 A party seeking to alter the trial court's judgment must file a notice of appeal. Tex. R.
App. P. 25.1(c). An appellant is a party taking an appeal to an appellate court. Tex. R. App.
P. 3.1(a). As we interpret these rules, the Nelms Partnership is an "appellant" (or "cross-appellant") with regard to its cross-point.

 The Texas Rules of Appellate Procedure do not clearly delineate when a cross-appellant
must file its brief raising issues on a cross-appeal. In appeals from a judgment notwithstanding
the verdict, Rule 38.2(b) suggests cross-issues can be raised as part of the appellee's brief. 
Tex. R. App. P. 38.2(b). In any event, Rule 38.8(a)(2) says our choices in this situation are to
dismiss the cross-appeal for want of prosecution or decline to dismiss it and give further
direction to the case as we consider proper. Tex. R. App. P. 38.8(a)(2). 

 Byrd in its appeal seeks to reverse the judgment in its entirety, whereas the Nelms
Partnership seeks to affirm it except for the additional recovery of prejudgment interest. Had
Byrd and the Nelms Partnership both presented themselves as appellants, as apparently
contemplated by the rules, it would have created the possibility of confusion with respect to the
reference of the parties in this opinion. Under the circumstances, it makes sense, even if not
technically correct, for the Nelms Partnership to present its cross-point in its appellee's brief,
as it has done. Under these circumstances, we will exercise our discretion and consider the
merits of the issue as briefed by the parties.

 Byrd does not dispute that the Nelms Partnership would ordinarily be entitled to
prejudgment interest. He argues only that the Nelms Partnership's attorney's declaration in its
opening statement that it was not suing for interest, constitutes a judicial admission, precluding
recovery of interest.

 The pertinent part of the statement by the Nelms Partnership's attorney is as follows:

 Think about through the years too. We're not even suing for operating costs,
interest, and everything, all the debt that was lost throughout all the years
just to try to keep this building afloat when all their partners left them and
abandoned them. That's not even a part of this case. So pursuing its case in
accordance with being the holder of the note and being entitled to reasonable
attorney's fees, that's why you're asked that today. Bottom line is we paid
more than our fair share. We owed some on it too. Yes, we're guarantors." 


 In order to be a judicial admission, the statement relied upon must be deliberate, clear, and
unequivocal. See Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex.
2001); Thomas v. Cornyn, 71 S.W.3d 473, 487-88 (Tex. App.--Austin 2002, no pet.) (quoting
Gevinson v. Manhattan Constr. Co., 449 S.W.2d 458, 466 (Tex. 1969)). A reasonable
interpretation of the statement is that it is a reference to the interest that the Nelms Partnership
paid on the building that it otherwise would not have paid had the other partners not abandoned
the joint venture. That being the case, the statement, as related to the issue of prejudgment
interest, was not deliberate, clear, and unequivocal. Consequently, it did not constitute a
judicial admission barring the Nelms Partnership from recovering prejudgment interest. See
Wolf, 44 S.W.3d at 568. Therefore, we find the court erred in failing to award the Nelms
Partnership prejudgment interest. We sustain the Nelms Partnership's cross-point.

CONCLUSION

 Though we approve of the disposition as to Byrd's liability, we reverse the judgment and
remand this cause to the trial court with instructions to re-calculate damages as to Byrd's
contributive share of $87,510.25, plus pre-judgment interest and attorney's fees. Tex. R. App.
P. 44.1(b).



 FELIPE REYNA

 Justice


Before Chief Justice Gray,

 Justice Vance, and

 Justice Reyna

 (Chief Justice Gray dissenting)

Affirmed in part, reversed and remanded in part

Opinion delivered and filed November 17, 2004

[CV06] 
1. "The Estate of H.G. Nelms" is an entity acting as a Texas general partnership comprised of four testamentary
trusts. To avoid confusion, "The Estate of H.G. Nelms" will hereinafter be called the "Nelms Partnership."
2. Byrd's sixth issue concerns the party the Estate of W. D. Culwell. Because that party is no longer a part of this
appeal, we will not address Byrd's sixth issue.
3. Rodehorst v. Gartner, 266 Neb. 842, 669 N.W.2d 679 (2003); Backman v. Hibernia Holdings, 1998 WL 427675
(S.D.N.Y. July 28,1998) (unpublished); Mandolfo v. Chudy, 253 Neb. 927, 573 N.W.2d 135 (1998); Albrecht v.
Walter, 1997 N.D. 238, 572 N.W.2d 809 (N.D. 1997); Nelms Partn. of Frantz v. Page, 426 N.W.2d 894 (Minn. Ct.
App. 1988); Curtis v. Cichon, 462 So.2d 104 (Fla. 2d DCA 1985); Koeniger v. Lentz, 462 So.2d 228 (LA Ct. App.
1984); Collins v. Throckmorton, Del. Supr., 425 A.2d 146 (1980); Weitz v. Marram, 34 Md. App. 115, 366 A.2d 86
(1976).
4. We note that the trial court miscalculated the percentage. The Nelms Partnership's proportionate share of 6.25
percent of $525,061.47 should be $32,816.34.